Dale HUFFMAN, Plaintiff–Appellant
and Cross–Appellee,

v.

WESTMORELAND COAL COMPANY,
a Delaware corporation, Defendant–
Appellee and Cross–Appellant.

No. 07CA2180.

Colorado Court of Appeals,
Div. VI.

Feb. 5, 2009.

§ 24–51–1105, C.R.S.2008.

Jeffrey M. Villanueva, P.C., Jeffrey M. Villanueva, Nicole S. Schram, Denver, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Sherman & Howard, L.L.C., Charles W. Newcom, Brooke A. Colaizzi, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge KAPELKE.*

In this action arising from his employment termination, plaintiff, Dale Huffman, appeals the summary judgments entered against him by the trial court on his Colorado Securities Act fraud claim and his civil theft claim against defendant, Westmoreland Coal Company. He also challenges the trial court's granting of defendant's motion in limine restricting evidence of damages at trial. Defendant cross-appeals the trial court's order denying its request for an award of attorney fees and costs. As to both the appeal and the cross-appeal, we affirm.

## I. Background

Plaintiff was employed by defendant as assistant general counsel. In May 2003, defendant terminated plaintiff. Plaintiff entered into negotiations with defendant to receive an enhanced severance package in return for a written waiver and release of claims.

Following negotiations, the parties entered into a Severance Offer (the contract) on May 23, 2003. During the negotiations, the parties had discussed the possible early vesting of options to purchase 1,100 shares of stock to which plaintiff would have been entitled had he remained employed by defendant. The final draft of the contract signed by both

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

parties, however, stated that plaintiff was entitled to options of 11,100 shares. The contract also provided that (1) plaintiff's stock options were exercisable on June 24, 2003; (2) the exercise price was $12.855 per share; and (3) plaintiff was to execute the release and waiver of claims before exercising his stock options.

On June 23, plaintiff notified defendant that he intended to exercise his options to purchase 11,100 shares and directed his broker to sell the stock upon completion of the exercise. Plaintiff had not yet signed the release and waiver. Defendant informed him there had been a typographical error in the contract and offered to allow him to exercise the options as to 1,100 shares, but not as to the additional 10,000 shares.

Plaintiff filed an action in the federal district court, asserting, among other claims, negligent misrepresentation and common law fraud. The court granted defendant's motion for summary judgment as to those claims and some others not relevant here and dismissed plaintiff's remaining claims without prejudice.

Plaintiff then filed this action in state district court, asserting claims for breach of express and implied contract, conversion, fraud, civil theft, and fraud under the Colorado Securities Act. Plaintiff later withdrew his conversion claim, and the court entered summary judgment on all the remaining claims, except the claim for breach of express contract.

One week before trial, defendant filed a motion in limine to limit evidence of plaintiff's damages to the difference between the stock option purchase price and the market price of the stock as of June 24, 2003. The trial court granted the motion on the second day of trial.

At trial, defendant argued that, based on the parties' past negotiations, plaintiff should have been aware that the 11,100 number was a typographical error. The court submitted a special verdict to the jury for a determination as to whether defendant had made a mistake in stating in the contract that plaintiff was granted options to purchase 11,100 shares. The jury found that defendant had

not made such a mistake, and the court later entered judgment in favor of plaintiff for $62,104.50.

Both parties filed post-trial motions. The court awarded plaintiff costs and prejudgment interest and denied the remaining motions, including defendant's motion for an award of attorney fees and costs.

## II. The Appeal

### A. Securities Fraud Claim

Plaintiff first contends that the trial court erred in granting summary judgment on his securities fraud claim based on the doctrine of issue preclusion. We disagree.

We review a summary judgment de novo. *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 146 (Colo.2007). Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *W. Elk Ranch, L.L.C. v. United States*, 65 P.3d 479, 481 (Colo.2002).

■ To establish a state securities fraud claim under section 11–51–501(1), C.R.S.2008, a plaintiff must show

> (1) that the plaintiff is a purchaser or seller of a security; (2) that the security is a "security"; (3) that the defendant acted with the requisite scienter; (4) that the defendant's conduct was in connection with the purchase or sale of a security; (5) that the defendant's conduct was in violation of section [11–51–501]; and (6) that plaintiff relied upon defendant's conduct to his or her detriment or that defendant's conduct caused plaintiff's injury.

*Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1102 (Colo.1995).

Here, as noted, in the federal court action defendant filed a motion for summary judgment as to several of plaintiff's claims, including his claims for negligent misrepresentation and common law fraud. In his response to the motion, plaintiff stated that "the claims should be streamlined to address the central controversy in this case"

and that he "confessed defendant's motion for summary judgment" with respect to five of the claims, including the negligent misrepresentation and fraud claims. The federal court thereafter entered summary judgment against plaintiff on those claims.

In support of its motion for summary judgment in *this action*, defendant argued that, as a result of plaintiff's confessing the summary judgment motion on his fraud and negligent misrepresentation claims in the *federal proceeding*, plaintiff was precluded under the doctrine of issue preclusion from asserting his Colorado Securities Act fraud claim. The court granted defendant's motion for summary judgment.

■ The doctrine of "issue preclusion" is also referred to as "collateral estoppel." *See, e.g., Farmers High Line Canal & Reservoir Co. v. City of Golden*, 975 P.2d 189, 196 n. 11 (Colo.1999); *Salazar v. State Farm Mut. Auto. Ins. Co.*, 148 P.3d 278, 280 (Colo.App. 2006). Issue preclusion bars relitigation of a legal or factual matter already decided in a prior proceeding. *Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47 (Colo.2001); *see also Pomeroy v. Waitkus*, 183 Colo. 344, 350, 517 P.2d 396, 399 (1973) (in certain circumstances, a final decision on an issue actually litigated and determined is conclusive on that issue in any subsequent suit).

■ A decision precludes relitigation of a legal or factual issue in a subsequent proceeding when

> (1) the issue sought to be precluded is identical to an issue actually and necessarily determined in a prior proceeding; (2) the party against whom estoppel is asserted was a party to or is in privity with, a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*In re Tonko*, 154 P.3d 397, 405 (Colo.2007); *see also Sunny Acres Villa*, 25 P.3d at 47.

■ The determination of an issue on a motion for summary judgment may preclude relitigation of that issue in a subsequent proceeding. *Carpenter v. Young*, 773 P.2d 561, 564–68 (Colo.1989).

Here, plaintiff does not argue that the second, third, or fourth elements of issue preclusion were not satisfied. Rather, the crux of his argument is that the confession of a summary judgment motion on claims for common law fraud and negligent misrepresentation in the prior action does not satisfy the "actually litigated" aspect of the first element, and that he was therefore not precluded from asserting a fraud claim under the Colorado Securities Act in this case.

In response to plaintiff's argument, defendant maintains that the pertinent issues relating to plaintiff's claim for Colorado Securities Act fraud were litigated in the federal action because that claim is essentially identical in substance to the negligent misrepresentation and common law fraud claims that were the subject of the federal court's summary judgment for defendant. We agree with defendant.

■ To satisfy the first element of issue preclusion, the issue in the present proceeding must be (1) identical to the prior issue and (2) actually determined in the prior proceeding. We analyze each requirement in turn.

### 1. Identity of Issues

■ Issue preclusion applies to both legal and factual issues. *Carpenter*, 773 P.2d at 565 n. 5. It may apply to claims for relief different from those litigated in the first action. *City & County of Denver v. Block 173 Assocs.*, 814 P.2d 824, 831 (Colo.1991); *Indus. Comm'n v. Moffat County Sch. Dist. Re No. 1*, 732 P.2d 616, 620 (Colo.1987). If two proceedings present different legal issues, but nevertheless involve the same underlying factual issue, the doctrine of issue preclusion may apply. *Grynberg v. Ark. Okla. Gas Corp.*, 116 P.3d 1260, 1262 (Colo. App.2005); *see also M & M Mgmt. Co. v. Indus. Claim Appeals Office*, 979 P.2d 574, 577 (Colo.App.1998) (identity of issues test is satisfied where the factual issue is the same, even though the legal issue differs); Restatement (Second) of Judgments § 27 (1982) (even though the second action is brought on

a different claim, collateral estoppel still applies to preclude relitigation of the issue).

■ Here, the underlying factual issue in both the state and federal proceedings is identical—whether defendant negligently or intentionally made untrue statements of material fact when it granted plaintiff options to 11,100 shares but then refused to allow him to exercise all of them.

■ We agree with defendant that the legal issues are also identical for purposes of issue preclusion. A claim for common law fraud and one for state securities law fraud are "sufficiently intertwined" within the same factual transaction, and the "major thrust of these claims is identical." *See Sandefer v. Dist. Court*, 635 P.2d 547, 551 (Colo.1981) (when the elements of a securities violation claim under the Colorado statute are compared with those of a common law fraud claim, it becomes apparent that the claims are identical and must be determined together to avoid the risk of inconsistent determinations of the same factual and legal issues), *overruled in part on other grounds by Sager v. Dist. Court*, 698 P.2d 250 (Colo. 1985). Further, a claim for state securities fraud requires proof of at least a negligent misrepresentation. *Compare First Nat'l Bank v. Collins*, 44 Colo.App. 228, 230, 616 P.2d 154, 155 (1980) (setting forth elements necessary to state a claim for negligent misrepresentation), *with Rosenthal*, 908 P.2d at 1102 (to prevail on a securities fraud claim, the plaintiff must show that the defendant acted with requisite intent and that the plaintiff relied upon the defendant's conduct to his or her detriment).

We therefore determine that, for purposes of issue preclusion, the issues relating to the common law fraud and negligent misrepresentation claims in the federal action are identical to those relating to plaintiff's claim under the Colorado Securities Act in this action.

### 2. "Actually Determined"

We next address whether the entry of summary judgment in the federal action satisfied the requirement that the issues be "actually determined."

■ To be "actually determined," an issue must be both (1) properly raised and (2) actually litigated and necessarily adjudicated. *See In re Tonko*, 154 P.3d at 405–06; *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 85–86 (Colo.1999); Restatement (Second) of Judgments § 27 cmt. d.

■ A legally raised issue is one that a party, by appropriate pleading, asserts through a claim against another. *Michaelson v. Michaelson*, 884 P.2d 695, 701 (Colo. 1994); *Bebo Constr. Co.*, 990 P.2d at 85. Here, the issue was properly raised in the federal proceeding because plaintiff alleged the claims in his complaint against defendant.

■ Next, the issue must have been submitted for determination and "actually determined" by the adjudicatory body. *Bebo Constr. Co.*, 990 P.2d at 85 (issue preclusion does not apply to those claims that could have been, but were not, litigated in the prior proceeding); *see also In re Tonko*, 154 P.3d at 405; 18 James Wm. Moore et al., *Moore's Federal Practice* § 132.03[2][a] (2008) (issue preclusion requires that the issue be actually litigated and not merely that it could have been litigated). Issue preclusion applies only to issues that were necessarily adjudicated in the previous action. *Bebo Constr. Co.*, 990 P.2d at 86; *see also In re Tonko*, 154 P.3d at 405–06. An issue is necessarily adjudicated when a party properly raised the issue and a determination on the issue was necessary to the court's judgment. *Bebo Constr. Co.*, 990 P.2d at 86.

■ Under Colorado law, summary judgment on an issue may be preclusive and prevent relitigation of that issue in a subsequent proceeding. *See id. at 85; Carpenter*, 773 P.2d at 564–68.

Here, however, plaintiff relies on the following statement in comment e to section 27 of the Restatement (Second) Judgments:

> In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore the rule of [issue preclusion] does not apply with respect to any issue in a subsequent action. The judgment may be conclusive, however, with respect to one or more is-

sues, if the parties have entered an agreement manifesting such an intention.

Plaintiff further relies on *Hoth v. Iowa Mutual Insurance Co.*, 577 N.W.2d 390 (Iowa 1998), in arguing that a judgment by confession does not satisfy the requirement that the issue was actually litigated in the prior litigation. *Id.* at 392.

Here, plaintiff maintained the fraud and negligent misrepresentation claims in the federal action for over a year, during which extensive discovery was conducted by both parties. It was only when defendant filed its motion for summary judgment that plaintiff decided to confess the motion and to allow dismissal of the claims. We conclude that under these circumstances plaintiff's claims were "actually litigated" and the federal court's entry of summary judgment constituted a determination of the claims. *See* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4444, at 296 (2d ed.2006) (preclusion is appropriate even if the summary judgment motion was unopposed because a party should not be able to "salvage a losing position for another day by simply walking away from the summary judgment proceeding") (citing *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir.1983)); *see also In re Johnson*, 2007 WL 646376 (S.D. Tex. No. 05 36068, Feb. 26, 2007) (unreported memorandum and order) ("[A] summary judgment, whether opposed or not, is a judgment on the merits which may only be granted if the movant presents evidence establishing its entitlement to judgment as a matter of law.... The Court therefore concludes that collateral estoppel applies to issues actually and necessarily resolved in granting an uncontested summary judgment.").

In *Gottheiner*, as here, the parties against whom issue preclusion was asserted had participated in extensive discovery for several months, elected not to oppose the motion for summary judgment, and then later asserted in a subsequent action that the summary judgment in the first action was not a proper basis for issue preclusion because the issues had not been actually litigated. In rejecting that assertion and upholding the trial court's ruling, the Ninth Circuit Court of Appeals stated:

> Gottheiner did not simply give up from the outset. For sixteen months he actively participated in litigation on behalf of himself and [his corporation]. That after many months of discovery Gottheiner decided his case was no longer worth the effort does not alter the fact that he had his day in court. Under the circumstances we hold that the lower court did not abuse its discretion in giving collateral estoppel effect to the prior judgment and we agree, upon *de novo* review that collateral estoppel was available to the [appellee].

*Gottheiner*, 703 F.2d at 1140.

We agree with the analysis and holding in *Gottheiner* and thus conclude that the summary judgment entered by the federal district court here constituted, for issue preclusion purposes, "actual litigation" of the issues relating to plaintiff's common law fraud and negligent misrepresentation claims. Further, because the issue whether defendant negligently or intentionally made misrepresentations of material fact is a key element of plaintiff's claim under the Colorado Securities Act, the trial court properly held that the determination of that issue in the federal action precluded its relitigation in this action.

Accordingly, the trial court did not err in granting defendant summary judgment on plaintiff's claim under the Colorado Securities Act.

### B. Civil Theft

Plaintiff next contends that the trial court erred in granting defendant summary judgment on his civil theft claim because the court did not grant him all favorable inferences from the undisputed facts. We disagree.

In pursuing a motion for summary judgment, the moving party has the burden of establishing the lack of a genuine issue of material fact. *Trigg v. State Farm Mut. Auto. Ins. Co.*, 129 P.3d 1099, 1101 (Colo. App.2005) (noting also that for summary judgment purposes, a material fact is a fact that affects the outcome of the case). This burden has two distinct components. The

initial burden of production is on the moving party to demonstrate an absence in the record of any material facts in dispute or an absence of any evidence supporting the nonmoving party's case. *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo.1987).

Once the moving party has met its initial burden of production, the burden shifts to the nonmoving party to demonstrate the existence of a triable issue of fact. *Woodward v. Bd. of Dirs. of Tamarron Ass'n of Condo. Owners, Inc.*, 155 P.3d 621, 624 (Colo.App. 2007) (quoting *Greenwood Trust Co. v. Conley*, 938 P.2d 1141, 1149 (Colo.1997)). The nonmoving party must receive the benefit of all favorable inferences that may reasonably be drawn from the *undisputed* facts. *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 225–26 (Colo.2001).

Section 18–4–405, C.R.S.2008, provides independent civil remedies to the owner of stolen property and requires that all property obtained by theft, robbery, or burglary be returned to the owner. *See In re Marriage of Allen*, 724 P.2d 651, 658 (Colo.1986).

 To succeed on his civil theft claim, plaintiff had to establish that (1) defendant knowingly obtained control over his property without authorization and (2) defendant did so with the specific intent to permanently deprive him of the benefit of the property. *Itin v. Ungar*, 17 P.3d 129, 134 (Colo.2000); *see* § 18–4–401(1), C.R.S.2008.

Defendant argues that summary judgment was appropriate because plaintiff failed to show that the stock options were property rights of which defendant intended to permanently deprive plaintiff. We agree.

 In determining whether there is a property right to employee stock options, a court must look to the terms of the contract granting the options. If the employee has a presently enforceable right under the contract, the stock options constitute a property right. If, however, the rights are not presently enforceable, then the stock options are a mere expectancy. *In re Marriage of Balanson*, 25 P.3d 28, 39 (Colo.2001); *In re Marriage of Miller*, 915 P.2d 1314, 1319 (Colo.1996) (determination of whether stock options granted for past or present services

outcome determinative in whether stock options are property).

 If, on the one hand, the contract granting the options indicates they were granted in exchange for present or past services, the employee has a contractually enforceable right to those options, even where they are not exercisable. *In re Marriage of Balanson*, 25 P.3d at 39. If, on the other hand, the options were granted for future services, the employee does not have enforceable rights under the contract until such time as the future services have been performed. *Id.* at 40; *Montemayor v. Jacor Commc'ns, Inc.*, 64 P.3d 916, 923 (Colo.App.2002) (recognizing that a non-vested interest is a mere expectancy outside the domestic relations context).

 Furthermore, as noted, the intent permanently to deprive another of the use and benefit of his or her property is a material element of the crime of theft. *People v. Pool*, 185 Colo. 131, 135, 522 P.2d 102, 104 (1974); *People v. Sharp*, 104 P.3d 252, 256 (Colo.App.2004). The intent permanently to deprive the owner of the use or benefit of a thing of value may be inferred from the defendant's conduct and the circumstances of the case, but requires proof of a knowing use by the defendant inconsistent with the owner's permanent use and benefit. *Sharp*, 104 P.3d at 256.

Here, in his complaint, plaintiff alleged that (1) on May 23, the severance offer granted him the vesting of options to purchase 11,100 shares; (2) on or after May 23, plaintiff was willing to sign the release required by the severance offer to exercise his stock options; (3) on June 23, plaintiff sent an exercise notice to defendant; (4) on June 23, defendant refused to honor the exercise notice; and (5) on June 24, defendant provided a contract similar to the original contract that gave plaintiff only options for 1,100 shares.

In its motion for summary judgment on this claim, defendant argued that these facts do not support a civil theft claim because plaintiff had not pointed to any act of control over his personal property. The trial court reasoned that the crucial determination was

whether defendant knowingly took plaintiff's stock with the intent to deprive him permanently of his rightful ownership of that stock. The court concluded that plaintiff had not presented any evidence showing that defendant intended to permanently deprive plaintiff of the stock.

■ Viewing the record in the light most favorable to plaintiff, we conclude that, on these facts, the stock options were not property and that plaintiff failed to present evidence that defendant intended to permanently deprive him of them.

In his complaint, plaintiff alleged that he was the owner of the stock options on June 24, 2003, the date on which defendant had allegedly committed the civil theft. However, the facts before the court on the motion for summary judgment showed that (1) at the time of his termination, plaintiff sought to accelerate the vesting of his stock options, indicating he had no vested property right in them otherwise; (2) on May 23, 2003, the contract was presented to plaintiff that accelerated the vesting of his options—a contract both plaintiff and defendant signed; (3) the contract was contingent on plaintiff's execution of a complete waiver and release of claims; (4) when plaintiff executed a form to exercise his stock options on June 23, 2003, he had not executed a waiver and release; and (5) defendant offered to provide him with some stock options at that time, but not the full amount plaintiff argued he was entitled to receive.

We therefore conclude that the stock options had not vested as of the date of the alleged theft and were therefore not property for purposes of a civil theft claim. Under these circumstances, the trial court properly entered summary judgment for defendant on the civil theft claim.

## C. Limitation of Evidence of Damages

Finally, plaintiff contends that the trial court erred when it granted defendant's motion in limine as to the measure and evidence of damages because, in doing so, the court improperly removed a factual issue from the jury. We disagree.

Defendant filed a motion in limine to limit plaintiff's damages to the difference between the stock option purchase price and the market price of defendant's stock as of June 24, 2003, the date plaintiff sent the exercise notice to defendant.

In ruling on the motion, the court noted that the following facts were undisputed: (1) the contract was a binding contract; (2) June 24, 2003, was the fixed exercise date before which the option could not be exercised; (3) there was no fixed exercise period in the contract; and (4) there was evidence of plaintiff's intent to exercise and cash out his stock options on June 24, 2003.

The trial court determined that the only fact that remained in dispute for determination by the jury was the number of stock options agreed to in the contract. The court precluded any further testimony as to the dollar value of damages or how the calculation was reached, based on its conclusions that (1) the undisputed date of exercise was June 24, 2003; (2) the parties had stipulated to a market price of $18.45 per share; and (3) the exercise price of $12.855 per share was undisputed.

Plaintiff argues, however, that because he testified at trial that he did not actually intend to exercise his stock options on June 24, there was an issue of fact as to when he was going to do so.

■ We review a trial court's in limine evidentiary ruling for abuse of discretion. *Ehrlich Feedlot, Inc. v. Oldenburg,* 140 P.3d 265, 272 (Colo.App.2006). A court's ruling is an abuse of discretion if it is manifestly arbitrary, unreasonable, or unfair. *Beauprez v. Avalos,* 42 P.3d 642, 652 (Colo.2002).

■ A jury's discretion in awarding damages is limited by the parameters of what the law will allow. *Creek v. Village of Westhaven,* 144 F.3d 441, 447 (7th Cir.1998). The court therefore serves the function of establishing the measure of damages and thus ensuring that a jury verdict is not unlawful or unreasonable. Such a limitation is not an abuse of discretion, *id.,* because the jury retains the sole prerogative to assess the *amount* of damages. *Logixx Automa-*

*tion, Inc. v. Lawrence Michels Family Trust,* 56 P.3d 1224, 1227 (Colo.App.2002).

Where the facts are undisputed and reasonable minds could draw but one inference from them, the court may rule on an issue as a matter of law. *Lindauer v. LDB Drainlaying, Inc.,* 38 Colo.App. 266, 269, 555 P.2d 197, 199 (1976) (issue of damages in a tort action).

■ Here, the court did not determine the amount of damages, only the method by which damages should be computed; the necessary variable needed to assess the amount of damages—the number of stock options defendant agreed to give plaintiff—was left to the jury. In reaching this conclusion, the court necessarily found, as a matter of law, that certain elements of the calculation were undisputed and that the proper yardstick for determining the amount of damages was the difference between the contract amount and the value of the stock at the time of the exercise or attempted exercise of the options.

We therefore perceive no error or abuse of discretion by the trial court in granting the motion in limine regarding the proper legal basis for determining the amount of damages incurred by plaintiff as a result of the alleged breach of contract.

### III. The Cross–Appeal

#### A. Attorney Fees

On cross-appeal, defendant first contends that the trial court erred in failing to grant it attorney fees pursuant to section 13–17–102, C.R.S.2008. We disagree.

■ The determination whether attorney fees should be awarded under section 13–17–102 is within the discretion of the trial court and will not be disturbed on appeal if it is supported by the evidence. *M Life Ins. Co. v. Sapers & Wallack Ins. Agency, Inc.,* 962 P.2d 335, 339 (Colo.App.1998). A trial court abuses its discretion in this context when "the findings and conclusions of the trial court are so manifestly against the weight of the evidence as to compel a contrary result." *Haystack Ranch, LLC v. Fazzio,* 997 P.2d 548, 556 (Colo.2000) (quoting *In re Water*

*Rights of Hines Highlands Ltd. P'ship,* 929 P.2d 718, 728 (Colo.1996)).

■ Under section 13–17–102(4), C.R.S.2008, the court shall assess attorney fees if it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification. An action lacks substantial justification when it is substantially frivolous, groundless, or vexatious. § 13–17–102(4). A groundless claim is one where the allegations in the complaint are not supported by any credible evidence at trial. *In re Talco Ltd.,* 769 P.2d 468, 476 (Colo.1989). A vexatious claim is one brought or maintained in bad faith, including conduct that is "stubbornly litigious." *Mitchell v. Ryder,* 104 P.3d 316, 321 (Colo. App.2004).

■ Here, defendant filed a motion for an award of attorney fees from the date plaintiff rejected defendant's pretrial settlement offer. It did so on the grounds that plaintiff's continued pursuit of his lawsuit after rejecting multiple settlement offers from defendant was groundless and vexatious because the final settlement offer was only slightly lower than the amount of plaintiff's final judgment.

The trial court disagreed, finding that the frivolous and groundless standard addressed unfounded claims and litigation, not the amount of the claimant's monetary recovery. The court held that (1) plaintiff's claims were not substantially groundless because he prevailed at trial and (2) he had not unnecessarily expanded the litigation by his decision to go to trial.

The record supports the trial court's finding that plaintiff's conduct was in good faith, based upon credible evidence, and not "stubbornly litigious." We therefore perceive no abuse of discretion in the trial court's denial of defendant's request for an award of attorney fees. Further, we deny defendant's request for an award of attorney fees incurred on appeal.

#### B. Costs

Defendant also contends that the trial court erred in denying its request for an award of its costs incurred after plaintiff

rejected its offer of judgment in the federal case. We disagree.

On June 15, 2005, defendant made an offer of judgment for $75,000 in the federal action pursuant to Fed.R.Civ.P. 68. Plaintiff rejected the offer. Following the trial in this action, the trial court entered judgment for plaintiff on July 12, 2007, in the amount of $62,104.50, exclusive of prejudgment interest. Plaintiff's total recovery, including costs and prejudgment interest through the expiration date of defendant's offer of judgment, was $74,436.17, slightly lower than the amount of the offer of judgment. See § 13–17–202(2), C.R.S.2008 (in comparing offer of settlement to final judgment, any prejudgment interest accrued subsequent to offer of settlement is not considered).

Defendant argues that the offer of judgment qualifies as a settlement offer under section 13–17–202 and, because plaintiff rejected it, defendant is now entitled to recover its costs incurred after June 15, 2005, including the costs of this appeal. Under the circumstances here, we disagree.

Section 13–17–202 states in relevant part:
(1) (a) Notwithstanding any other statute to the contrary, *in any civil action of any nature commenced or appealed in any court of record in this state:*

. . . .

(II) If the defendant serves an offer of settlement in writing at any time more than fourteen days before the commencement of the trial that is rejected by the plaintiff, and the plaintiff does not recover a final judgment in excess of the amount offered, then the defendant is entitled to costs accruing after the offer of settlement.

(Emphasis added.)

For purposes of section 13–17–202, an offer of settlement need not be in any particular form. See *Dillen v. HealthOne, L.L.C.,* 108 P.3d 297, 301 (Colo.App.2004). In the federal case defendant made an "Offer of Judgment" made "pursuant to Fed.R.Civ.P. 68."

In this action, defendant also made an offer of settlement for an amount greater than the judgment obtained by plaintiff; however, because the offer was made less than fourteen days before trial, it would not meet the requirements of section 13–17–202.

In denying defendant's request for an award of its costs under section 13–17–202, the trial court stated that the federal and state actions were distinct in time and that claims made by plaintiff in the state and federal court actions were different. The court concluded:

> Consequently, even if defendant's June 15, 2005 Offer of Judgment under the federal Rules will satisfy the elements of an Offer of Settlement under § 13–17–202, that Offer was made before the state action was even filed, and pertained to different claims (or at least to additional claims) than those pleaded in this state action.

We agree with the trial court's analysis. Where, as here, the offer of settlement was made in a previous action, involving at least some claims that are different from those asserted in the later case, and where a timely statutory offer of settlement was *not* made in the action in which the judgment was obtained, section 13–17–202 does not apply.

The trial court therefore properly denied defendant's request for an award of its costs under section 13–17–202.

The judgments and order are affirmed.

Judge BERNARD and Judge J. JONES concur.