2012 COA 85M

**Patrick YOUNGS and Chris Forsyth, Petitioners,**

**v.**

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado, White Moving & Storage, Inc., and Pinnacol Assurance, Respondents.**

No. 11CA1259.

Colorado Court of Appeals, Div. II.

May 10, 2012.

As Modified on Denial of Rehearing July 19, 2012.

Chris Forsyth Law Office, LLC, Chris Forsyth, Denver, Colorado, for Petitioners.

John W. Suthers, Attorney General, Alice Q. Hosley, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Harvey D. Flewelling, Denver, Colorado, for Respondents White Moving & Storage, Inc. and Pinnacol Assurance.

Opinion by Judge HAWTHORNE.

¶ 1 In this workers' compensation action, Patrick Youngs and his counsel, Chris Forsyth (collectively appellants), seek review of the final order entered by the Industrial Claim Appeals Office (Panel) affirming the administrative law judge's (ALJ's) order assessing Pinnacol Assurance's [1] attorney fees and costs against Mr. Forsyth, individually, because appellants requested a hearing on an issue which was not ripe for adjudication in violation of section 8–43–211(2)(d), C.R.S. 2011. We perceive no basis for disturbing the Panel's ruling and therefore affirm.

¶ 2 This case presents one issue of first impression: whether section 8–43–211(2)(d) requires that reasonable attorney fees and costs be assessed when only one issue, among others raised, in a request for a hearing is not ripe for adjudication at the time such request is made. Based on the statute's plain language and giving proper deference to the Panel's interpretation of it, we conclude that if any person requests a hearing on an issue that is not independently ripe for adjudication when such request is made, even though other ripe issues are raised in the same request, that person must be assessed the reasonable attorney fees and costs of the opposing party in preparing for such hearing.

## I.  Procedural History

¶ 3 Mr. Youngs sustained an admitted, work-related injury in March 2005.  He was

---

1.  Although respondents are Industrial Claim Appeals Office, White Moving & Storage, Inc., and Pinnacol Assurance, only Pinnacol's attorney fees and costs were assessed against Mr. Forsyth. In this opinion, White Moving & Storage and Pinnacol will be collectively referred to as employer.

awarded benefits for an eight percent impairment to his left upper extremity and a five percent impairment to his left lower extremity. His claim for permanent, total disability (PTD) was denied by the ALJ, and the order denying PTD was affirmed by the Panel and a division of this court. *Youngs v. Indus. Claim Appeals Office,* (Colo.App. No. 08CA2209, 2009 WL 3863413, Nov. 19, 2009) (not published pursuant to C.A.R. 35(f)) (*Youngs I*) (*cert. denied* May 24, 2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 553, 178 L.Ed.2d 372 (2010).

¶ 4 While the appeal in *Youngs I* was pending, appellants filed an application for hearing on a "petition to reopen [permanent partial disability (PPD) ] and PTD pursuant to [section] 8–43–303, [C.R.S.2011] fraud/mistake." In response, employer argued

[Appellants] ha[ve] already had an opportunity to litigate any alleged mistake or fraud ...; ALJ Broniak has already found there was no mistake or fraud. [Employer] allege[s] that endorsing reopening based on fraud or mistake is frivolous in light of ALJ Broniak's order [and] reserve[s] the right to pursue any applicable sanctions, including attorneys fees and/or penalties if applicable.

¶ 5 Although the ALJ agreed that appellants had improperly endorsed the reopening issue and consequently dismissed the petition to reopen, he declined to assess employer's attorney fees and costs against appellants, concluding that, under section 8–43–211(2)(d), all issues endorsed in an application for hearing must be unripe in order for attorney fees and costs to be assessed. Appellants did not appeal the ALJ's determination that endorsing the reopening issue was improper, but employer asked the ALJ to reconsider his denial of its request for attorney fees and costs. When that request was denied, employer sought review before the Panel.

¶ 6 The Panel disagreed with the ALJ's interpretation of section 8–43–211(2)(d). It held that the "plain language of [section] 8–43–211(2)(d) ... require[s] an assessment of fees and costs if a party sets a hearing on any issue that is not ripe for adjudication." The Panel therefore remanded the "matter for a determination of the attorney fees and costs to be awarded to [employer] as a penalty under [section] 8–43–211(2)(d)."

¶ 7 On remand, a different ALJ held a multi-day hearing concerning the fees employer sought for preparing for hearing on an unripe issue. She found the testimony of employer's legal expert, an attorney with the law firm retained to represent employer, credible and persuasive. The ALJ determined that the rates charged by employer's counsel were reasonable. She therefore assessed attorney fees and costs of $23,308.54 against Mr. Forsyth, individually, pursuant to employer's request.

¶ 8 Appellants filed a petition to review the ALJ's order. The Panel rejected their arguments and affirmed the ALJ's order, concluding that the ALJ did not err and did not abuse her discretion in assessing the attorney fees and costs against Mr. Forsyth.

¶ 9 Appellants now appeal.

## II. Ripeness and Attorney Fees and Costs

¶ 10 We first address the final order's merits. Appellants contend that (1) the issues in the petitions to reopen PPD and PTD endorsed in the applications for hearing and notice to set were ripe; (2) even if the issues were not ripe, assessing attorney fees and costs was inappropriate because other issues endorsed in the applications for hearing were ripe; and (3) "the amount of fees awarded [was] erroneous." We reject all three contentions.

¶ 11 The statute in question here provides:

If any person requests a hearing or files a notice to set a hearing on issues which are not ripe for adjudication at the time such request or filing is made, such person shall be assessed the reasonable attorney fees and costs of the opposing party in preparing for such hearing or setting.

§ 8–43–211(2)(d).

### A. Ripeness of Petitions for Reopening Issues

¶ 12 In January 2008, appellants had petitioned the Panel to review the ALJ's denial of the request for PTD benefits. Appellants filed, in March and July 2008, respectively, two separate applications for hearing and notice to set, each petitioning to "reopen PPD and PTD pursuant to C.R.S. 8–43–303

fraud/mistake." After the ALJ issued a supplemental order, appellants filed a second petition to review. Although these petitions for review are not in the record before us, we take judicial notice of the record filed in conjunction with appellants' earlier appeal in *Youngs I. See Bristol Bay Prods., LLC v. Lampack*, —— P.3d ——, ——, 2011 WL 5865902 (Colo.App.2011) ("[A] court may take judicial notice of the contents of court records in a related proceeding.").

¶ 13 In October 2008, the Panel issued its order affirming the ALJ's PTD and PPD rulings. Appellants appealed the Panel's decision to this court. The division's decision affirming the Panel's ruling, *Youngs I*, was subsequently issued.

¶ 14 Appellants contend that the issue presented by their petitions to reopen PPD and PTD based on "fraud/mistake" was ripe for adjudication when the applications for hearing were filed. Assuming, without deciding, that appellants properly preserved this ripeness issue, we conclude that the ALJ and the Panel properly determined that the petition to reopen was not ripe when appellants made the request.

¶ 15 An issue is ripe for hearing when it "is real, immediate, and fit for adjudication." *Olivas–Soto v. Indus. Claim Appeals Office*, 143 P.3d 1178, 1180 (Colo.App.2006). Conversely, an issue is not ripe and "adjudication should be withheld for uncertain or contingent future matters that suppose a speculative injury which may never occur." *Id.*

¶ 16 Whether an issue is ripe for review is a legal question that we review de novo. *See Timm v. Prudential Ins. Co.*, 259 P.3d 521, 528 (Colo.App.2011) ("On appeal of a determination of ripeness, we review the trial court's factual findings for clear error and its legal conclusions de novo.").

¶ 17 Appellants' PTD and PPD claims at issue in *Youngs I* were not fully adjudicated when appellants filed the applications for hearing containing the petitions to reopen those issues. Indeed, those issues were not fully adjudicated until the United States Supreme Court denied appellants' petition for a writ of certiorari. The PTD and PPD issues were contingent on those appellate rulings, because a final decision in appellants' favor on appeal would have mooted the petition to reopen as to those issues. Therefore, these issues were *not* ripe for reopening when appellants requested a hearing and filed the notice to set. · *Cf. Rantz v. Kaufman*, 109 P.3d 132, 141 (Colo.2005) ("[F]or the purposes of issue preclusion, a judgment that is still pending on appeal is not final.... ").

¶ 18 Appellants argue that even though the appeals and the petitions to reopen were pending concurrently, the issues were nevertheless ripe because they were premised on a previously unarticulated theory, namely, that the division-sponsored independent medical examination (DIME) was tainted by the physician's undisclosed existing relationship with Pinnacol.

¶ 19 However, appellants had raised the DIME physician's alleged bias and fraud arising from her prior and continuing relationship with Pinnacol before the ALJ, and that claim was considered in *Youngs I*. Therefore, appellants' grounds for reopening the PTD and PPD claims were neither novel nor previously unarticulated. Accordingly, the ALJ and the Panel properly concluded that the petitions to reopen issues were unripe.

### B. Ripe and Unripe Issues in Applications for Hearing

¶ 20 Appellants contend that even if the issues raised in the petitions to reopen were not ripe, attorney fees and costs should not have been imposed because other issues raised in the applications for hearing were ripe. They argue that section 8–43–211(2)(d)'s language mandating an attorney fees and costs award for endorsing unripe issues allows assessing fees and costs only if all issues endorsed in an application for hearing are not ripe. Because it is undisputed that other issues endorsed in the applications for hearing were ripe, appellants reason that fees and costs were improperly assessed. We are persuaded, however, by the Panel's interpretation of section 8–43–211(2)(d), and therefore we reject appellants' contention.

¶ 21 When interpreting a statute, we must determine and give effect to the General Assembly's intent. *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1036 (Colo.

2004); *see also Anderson v. Longmont Toyota, Inc.*, 102 P.3d 323, 326 (Colo.2004) (our duty is "to effectuate the intent and purpose of the General Assembly"). Hence, we apply "the plain and ordinary meaning of the statute, if clear." *Anderson*, 102 P.3d at 326; *see also Indus. Claim Appeals Office v. Orth*, 965 P.2d 1246, 1252 (Colo.1998).

¶ 22 We defer to the interpretation of the statute by the agency charged with enforcing it—here, the Panel. *Anderson*, 102 P.3d at 326; *Orth*, 965 P.2d at 1254; *see Sanco Indus. v. Stefanski*, 147 P.3d 5, 8 (Colo.2006) (we defer to the Panel's reasonable interpretations of a statute it administers). We will set aside the Panel's interpretation only "if it is inconsistent with the clear language of the statute or with the legislative intent." *Support, Inc. v. Indus. Claim Appeals Office*, 968 P.2d 174, 175 (Colo.App.1998).

¶ 23 Appellants argue that because section 8–43–211(2)(d) uses the plural, "issues," and does not expressly state that fees and costs shall be imposed for endorsing *any* unripe issue, all issues endorsed in an application for hearing must be unripe before fees may be assessed. However, the Panel interprets the statute as requiring that fees and costs be assessed when a person endorses any issue which is not ripe even though it may be included with other ripe issues. We conclude that the Panel's interpretation is consistent with the statute's plain language. Section 2–4–102, C.R.S.2011, provides that "the singular includes the plural, and the plural includes the singular." That statute effectively forecloses appellants' argument.

¶ 24 In any event, the Panel's interpretation is supported by the relevant statutory framework. The Panel determined that the Act's goal of providing benefits as efficiently as possible would not be served if appellants' interpretation were followed. *See* § 8–40–102(1), C.R.S.2011 ("It is the intent of the general assembly that the [Act] be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation...."). The Panel observed, and we agree, that requiring all issues in an application for hearing to be found unripe leaves open the possibility for abusive practices, such as endorsing numerous issues that are not ripe and one ripe issue to avoid attorney fees and costs being assessed under section 8–43–211(2)(d). Opposing parties would be forced to prepare for a hearing on issues that are not ripe, but would not be awarded attorney fees and costs as the Act contemplates. Such an outcome would impede the Act's mandate of assuring "quick and efficient" claims resolution.

¶ 25 Thus, the Panel's interpretation is consistent with the statute's plain language and the General Assembly's intent. *See Support, Inc.*, 968 P.2d at 175; *Mountain Mobile Mix, Inc. v. Gifford*, 660 P.2d 883, 886 (Colo. 1983) (supreme court applied § 2–4–102 to word "person" in § 13–21–111(1), C.R.S.2011, to mean multiple defendants, citing *Renck v. Motor Vehicle Division*, 636 P.2d 1294 (Colo. App.1981) (police "officer" includes "officers")); *DeForrest v. City of Cherry Hills Village*, 990 P.2d 1139, 1144 (Colo.App.1999) (statutory waiver of sovereign immunity for failure to repair traffic "signal" applies to public entity's failure to repair multiple traffic signals).

¶ 26 The Panel's interpretation is also consistent with *BCW Enterprises, Ltd. v. Industrial Claim Appeals Office*, 964 P.2d 533 (Colo.App.1997). The division in *BCW* observed that when a hearing is held on collateral matters "such matters also must be independently ripe for determination or the party bringing them will be subject to sanctions under [section] 8–43–211(2)(d)." *Id.* at 538. By using the phrase "independently ripe," the *BCW* division indicated that each issue endorsed in an application for hearing must be ripe and that endorsing an issue that is not "independently ripe" would result in attorney fees and costs being assessed against the violating party.

¶ 27 Because the Panel's interpretation of section 8–43–211(2)(d) is reasonable and consistent with the statute's plain language and the General Assembly's intent, we defer to it. *See Sanco Indus.*, 147 P.3d at 8; *Jiminez v. Indus. Claim Appeals Office*, 51 P.3d 1090, 1093 (Colo.App.2002); *Support, Inc.*, 968 P.2d at 175.

¶ 28 We therefore conclude that the Panel did not err when it determined that Mr. Forsyth was properly assessed Pinna-

col's reasonable attorney fees and costs for petitioning to reopen the PTD and PPD issues while they were being litigated in a pending appeal.

### C. Attorney Fees' Reasonableness

¶ 29 Appellants next contend that the amount of fees assessed was "erroneous," that the ALJ failed to make findings required by statute, and that the parties were following "the law of the case" in proceeding with discovery to which a portion of the fees was attributable. We are not persuaded.

■ ¶ 30 The amount of attorney fees and costs assessed under section 8–43–211(2)(d) is within the ALJ's sound discretion. *See Haystack Ranch, LLC v. Fazzio,* 997 P.2d 548, 556 (Colo.2000) ("Appellate courts review an award of attorney fees and costs for an abuse of discretion, which occurs when 'the findings and conclusions of the trial court are so manifestly against the weight of the evidence as to compel a contrary result.' ") (quoting in part *In re Water Rights of Hines Highlands Ltd. P'ship,* 929 P.2d 718, 728 (Colo.1996)).

¶ 31 Appellants do not challenge the fees' and costs' reasonableness. Rather, appellants contend that the ALJ failed to adhere to certain civil procedure rules and statutes by failing to (1) require prior notice and articulation of the fees and costs amount as required by C.R.C.P. 121, section 1–22; and (2) apply the reasonableness factors as required by section 13–17–103, C.R.S.2011.

■ ¶ 32 Neither Rule 121, section 1–22, nor section 13–17–103 is applicable to this action. Rule 121, section 1–22 is a rule of civil procedure. A rule of civil procedure may apply to workers' compensation actions only if it does not conflict with a provision of the Act or the procedural rules applicable to workers' compensation actions. *See Nova v. Indus. Claim Appeals Office,* 754 P.2d 800, 802 (Colo.App.1988) ("The Colorado Rules of Civil Procedure do not apply in any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute.").

¶ 33 The fees and costs assessed in this case are expressly authorized by the Act, without reference to any other rule or statute. The General Assembly made no provision requiring notification of the precise amount of fees and costs sought under the statute. Section 8–43–211(2)(d) permits a party to seek *before* the hearing, all fees and costs incurred "in preparing for such hearing or setting." In contrast, Rule 121, section 1–22 permits a party to seek fees after judgment, thereby enabling a party to tally all the fees it seeks to recover and present the opposing party with a detailed enumeration of fees and costs sought. Consequently, the procedures conflict and Rule 121, section 1–22 is therefore inapplicable to fees sought under section 8–43–211(2)(d).

■ ¶ 34 Nor does section 13–17–103 apply here. Article 17 applies only to "courts of record," § 13–17–101, C.R.S.2011, which does not include ALJs and the Panel. *See* § 13–1–111, C.R.S.2011. We are not at liberty to apply statutes expressly limited to judicial proceedings to administrative proceedings under the Act. *See Kraus v. Artcraft Sign Co.,* 710 P.2d 480, 482 (Colo.1985) ("We have uniformly held that a court should not read nonexistent provisions into the ... Act."). Accordingly, we conclude that the Panel did not err by declining expressly to apply section 13–17–103 reasonableness factors to attorney fees and costs awarded under section 8–43–211(2)(d).[2]

■■ ¶ 35 In contending that the "law of the case" dictated that discovery was appropriate and that resulting attorney fees and costs should not be recoverable by employer, appellants misconstrue the doctrine. That doctrine is a "discretionary rule of practice ... based primarily on considerations of judicial economy and finality." *Brodeur v. Am. Home Assurance Co.,* 169 P.3d 139, 149 (Colo.2007). Under the doctrine, although a court is " 'not inexorably bound by its own precedents, prior relevant rulings made in the same case are generally to be followed.' " *In re Bass,* 142 P.3d 1259, 1263 (Colo.2006) (quoting *People ex rel. Gallagher v. Dist.*

2. This is not to say that an ALJ's award of fees may be arbitrary. The fees still must be reasonable in light of the case's circumstances.

*Court,* 666 P.2d 550, 553 (Colo.1983)). Here, appellants point to no prior ruling to which the ALJ should have adhered. In short, they fail to specify any "law of the case" that was not followed in the subsequent ruling assessing Pinnacol's attorney fees and costs. Absent any showing that the law of the case was improperly ignored, we perceive no grounds for disturbing the Panel's ruling on this basis.

¶ 36 In addition, adopting appellants' suggestion that simply because discovery proceeded, Mr. Forsyth should not be held liable for Pinnacol's resulting fees and costs would eviscerate the General Assembly's mandate to assess the opposing party's reasonable attorney fees and costs incurred in preparing for a hearing on an issue that is not ripe. *See* § 8–43–211(2)(d).

¶ 37 Accordingly, we conclude that the Panel did not err in interpreting and applying section 8–43–211(2)(d), and that the ALJ did not abuse her discretion in assessing Pinnacol's attorney fees and costs against Mr. Forsyth.

### III. Evidentiary Issues

¶ 38 We next address three issues raised by appellants concerning the ALJ's evidentiary rulings. We are not persuaded that the ALJ erred or abused her discretion in the challenged rulings.

### A. Production of Documents Relied upon by Legal Expert

¶ 39 Appellants contend that the ALJ erred in denying their request to obtain copies of documents on which employer's legal expert relied in preparing to testify. They argue that because the attorney testified, no privilege attached to the documents.

¶ 40 However, this argument misses the point. The ALJ denied appellants' discovery motion because the request was not timely. The record establishes that appellants did not formally request the discovery until September 11, 2010, nearly two months after the first hearing on the fees and costs issue. The ALJ therefore denied appellants' request "on the grounds that it was a motion not timely made" and "[a]ny discovery that was served after the July 14th start of the hearing, any request to conduct discovery is denied."

¶ 41 Appellants nevertheless maintain that employer waived its attorney-client privilege "as to documents provided to its expert witness." This argument, however, confuses the ALJ's untimeliness ruling with an argument appellants raised later in the hearing about questioning employer's legal expert concerning attorney-client privileged matters. Appellants raised the attorney-client privilege issue *after* the ALJ had already barred discovery of the documents because the request was untimely. Indeed, Mr. Forsyth described the attorney-client privilege issue as a "separate issue" concerning "whether [he] can question [the expert] today regarding the attorney/client privilege," not whether documents would be withheld on privilege grounds.

¶ 42 Appellants have not pointed to any ruling by the ALJ limiting counsel's questioning of employer's legal expert on attorney-client privilege grounds. Absent a showing that the ALJ abused her discretion by improperly barring one or more questions on attorney-client privilege grounds, or a showing that the ALJ erred in concluding that appellants' document production request was untimely, we perceive no basis for finding that the ALJ abused her discretion.

### B. Rejection of Witness's Testimony

¶ 43 Appellants next contend that the ALJ abused her discretion by prohibiting them from calling employer's lead counsel as a witness to answer questions regarding "the hourly quota or goal" set for more junior attorneys within his firm and the compensation agreement between the firm and Pinnacol. They maintain that, by refusing to allow the lead counsel's testimony, the ALJ violated a prehearing order listing the counsel as a witness. We need not reach this issue because we agree with the Panel that appellants have not adequately preserved it for review.

¶ 44 Where an issue has not been adequately raised before the Panel, it is not preserved for appellate review. *See Holliday v. Bestop, Inc.,* 23 P.3d 700, 708 (Colo.

2001). Here, the only references to the ALJ's disallowing the lead counsel's testimony in the petition to review or brief in support of it were two sentences addressing the legal expert's affidavit and his testimony's veracity. Indeed, the issue was not addressed in the Panel's final order. Accordingly, we decline to address it.

### C. Exclusion of Affidavit and Attorney Bills

¶ 45 Appellants contend that the ALJ abused her discretion by rejecting their offer of an affidavit and attorney fee bill into evidence. They argue that the ALJ incorrectly ruled that the documents were prepared for settlement negotiations, despite the absence of any language in the documents so identifying them. We disagree.

¶ 46 Appellants disregard the testimony of employer's legal expert unequivocally identifying the documents as prepared exclusively for settlement negotiations. It is solely within the ALJ's discretionary province to weigh the evidence and determine the credibility of expert witnesses. *See Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411, 415 (Colo.App.1995) (reviewing court must defer to the ALJ's credibility determinations and resolution of conflicts in the evidence and may not substitute its judgment for that of the ALJ); *Rockwell Int'l v. Turnbull*, 802 P.2d 1182, 1183 (Colo.App.1990) ("if, as here, expert testimony is presented, the weight to be accorded to the testimony is a matter exclusively within the discretion of the ... [ALJ] as fact-finder"). Nor may we set aside a ruling dependent on witness credibility where the testimony has not been rebutted by other evidence. *See Arenas v. Indus. Claim Appeals Office*, 8 P.3d 558, 561 (Colo.App.2000) ("we may not interfere with the ALJ's credibility determinations" unless the evidence is "overwhelmingly rebutted by hard, certain evidence" to the contrary).

¶ 47 Accordingly, we perceive no abuse of discretion in the ALJ's determining that the documents were inadmissible. *See Dover Elevator Co. v. Indus. Claim Appeals Office*, 961 P.2d 1141, 1143 (Colo.App.1998) ("[T]he ALJ's resolution of conflicts in the evidence, his or her credibility determinations, and the plausible inferences drawn from the evidence are binding on review.").

### IV. Constitutional Issues

¶ 48 Finally, appellants contend that Colorado's system of addressing workers' compensation claims—with hearings held by ALJs and the opportunity for review by the Panel—is unconstitutional. They argue that Colorado's system (1) is unique among the states; and (2) violates constitutional guarantees of equal protection because (a) appellants cannot pursue their claims in district court, (b) ALJs and Panel members are not subject to judicial financial disclosure laws, (c) ALJs and Panel members are not appointed by the Governor of Colorado for a term of years; and (d) ALJs and Panel members are not subject to impeachment. Because appellants asserted these arguments in *Youngs I* and a division of this court addressed them there, we decline to address them here.

### A. Law of the Case

¶ 49 Once an issue has been raised and decided, it becomes the law of the case. "When a court issues final rulings in a case, the 'law of the case' doctrine generally requires the court to follow its prior relevant rulings." *Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 243 (Colo.2003). Although an appellate court is not required to adhere to an earlier appellate ruling "if a previous decision is no longer sound because of changed conditions of [sic] law," the doctrine certainly permits, and indeed encourages, a court to so rely on it in the interest of judicial efficiency. *Id.*

¶ 50 Here, appellants' contention that Colorado's system for addressing disputed workers' compensation claims is unconstitutional has already been asserted in this case, but was found to be wholly contrary to applicable law. *Youngs I; see also Aviado v. Indus. Claim Appeals Office*, 228 P.3d 177, 180–81 (Colo.App.2009). We perceive no reason to revisit these rulings.

### B. Issue Preclusion

¶ 51 Moreover, even if appellants' arguments here deviate slightly from the constitutional arguments they asserted in *Youngs I*, they are nonetheless precluded from raising the issues again. Under the

issue preclusion doctrine, "once a court has decided an issue necessary to its judgment, the decision will preclude relitigation of that issue in a later action involving a party to the first case." *People v. Tolbert,* 216 P.3d 1, 5 (Colo.App.2007). Issue preclusion is less "flexible" than the law of the case doctrine, because it completely bars relitigating an issue if the following four criteria are established:

> (1) the issue sought to be precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom [issue preclusion] is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Sunny Acres Villa, Inc. v. Cooper,* 25 P.3d 44, 47 (Colo.2001).

¶ 52 Issue preclusion applies to administrative proceedings, including those involving workers' compensation claims. *Id.*

¶ 53 "To satisfy the first element of issue preclusion, the issue must be identical to the issue properly raised in a prior proceeding for determination by an adjudicatory body." *In re Tonko,* 154 P.3d 397, 405 (Colo.2007). For an issue to have been actually litigated, it must have been raised by one or more parties in the earlier proceeding, "by appropriate pleading . . . through a claim or cause of action against the other [party]." *Bebo Constr. Co. v. Mattox & O'Brien, P.C.,* 990 P.2d 78, 85 (Colo.1999). The issue must have been "submitted for determination and then actually determined by the adjudicatory body." *Id.* An issue "is necessarily adjudicated if it is essential to the judgment entered." *Brownson–Rausin v. Indus. Claim Appeals Office,* 131 P.3d 1172, 1176 (Colo. App.2005).

### 1. Identity of Issues

¶ 54 An issue can be identical for issue preclusion purposes if either the facts or the legal matter raised is the same. *Carpenter v. Young,* 773 P.2d 561, 565 n. 5 (Colo.1989) ("Issue preclusion prevents relitigation of a factual or legal matter that was

previously litigated and decided."). "It may apply to claims for relief different from those litigated in the first action. If two proceedings present different legal issues, but nevertheless involve the same underlying factual issue, the doctrine of issue preclusion may apply." *Huffman v. Westmoreland Coal Co.,* 205 P.3d 501, 506–07 (Colo.App.2009) (citations omitted).

¶ 55 At oral argument in this case, Mr. Forsyth maintained that the constitutional issue he raises now is different from the one raised in *Youngs I* because here he is not questioning the existence of the Office of Administrative Courts (OAC). He stated that he now contends that ALJs and Panel members operating within the OAC must be held to the same "judicial principles" as judges in the judiciary and that litigants seeking redress through the OAC and ICAO are entitled to the "procedural protections" afforded to litigants in the judicial branch by reason of judges being subject to public financial disclosure rules, impeachment, and the "selection and retention" process. He argued that the absence of these "procedural protections" deprives Mr. Youngs, a workers' compensation claimant, of his constitutional right to equal protection.

¶ 56 Despite these assertions, comparing appellants' arguments in *Youngs I* with the arguments raised here establishes that they, and hence the constitutional issue, are identical. In *Youngs I,* appellants argued that workers' compensation claimants' rights to equal protection are violated because they must have their claims heard before an "executive branch judge," who is not subject to "the *selection and retention* provisions of the Colorado Constitution[,] [which] help to ensure the quality of the judiciary." (Emphasis added.) Further, appellants argued that "[b]y allowing executive branch judges to rule on workers' compensation matters, the litigants in workers' compensation [actions] are being deprived of the *selection and retention* provision of Article VI of the Colorado Constitution." (Emphasis added.)

¶ 57 Mr. Forsyth used this identical phrase—"selection and retention"—in oral argument in this case when claiming that workers' compensation claimants are de-

prived of their rights to equal protection. And although appellants' opening brief in this case did not use this precise language, it discussed the lack of governor-appointed judges in the OAC and the ICAO and the absence of an impeachment process covering OAC judges.

¶ 58 Appellants also argue that workers' compensation claimants' equal protection rights are violated

> because all other Colorado litigants with claims based on state law have their claims heard by judges who are subject to public financial disclosures, ... who are appointed by the governor, who are appointed for a term of years and who are subject to impeachment.

In other words, appellants argue that because the selection (gubernatorial appointment) and retention (impeachment) processes are lacking in the OAC and ICAO, Mr. Youngs is deprived of his equal protection right to be treated the same as litigants whose cases are heard by a judge subject to selection and retention rules. This is essentially the identical argument appellants asserted in *Youngs I*.

■ ¶ 59 Nor do appellants' other arguments persuade us that the issue preclusion doctrine does not apply here. While it appears appellants did not argue in *Youngs I* that the lack of required public financial disclosures by OAC and ICAO judges violates Mr. Youngs' equal protection rights, this *argument* is part of the broader equal protection *issue* appellants raised in *Youngs I*. Issue preclusion bars the relitigation of identical *issues*. *See Tonko*, 154 P.3d at 405. The argument or legal theory need not be identical in every way for an issue to be precluded in subsequent proceedings. *See Huffman*, 205 P.3d at 506–07. For purposes of issue preclusion analysis, the equal protection issue appellants assert here is essentially identical to the equal protection issue raised in *Youngs I*.

2. Remaining Issue Preclusion Elements

■ ¶ 60 Here, all remaining issue preclusion elements are also satisfied:

- The parties here are identical to those in *Youngs I*. Indeed, both appeals arose from the same underlying workers' compensation action.

- A full and final judgment was rendered on the same constitutional issue in *Youngs I*. "A final judgment 'ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding.'" *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 571 (Colo.App.2003) (quoting *D.H. v. People*, 192 Colo. 542, 544, 561 P.2d 5, 6 (1977)).

- Appellants were given a full and fair opportunity to litigate the equal protection issue in *Youngs I*, and appellants sought certiorari review in both the Colorado Supreme Court and the United Stated Supreme Court, which each court denied.

3. Constitutional Issue Is Barred

■ ¶ 61 All issue preclusion elements having been satisfied here, appellants are barred from relitigating the equal protection issue. The parties are identical; the issue was fully addressed by a division of this court in *Youngs I* and certiorari was denied by both the Colorado Supreme Court and the United States Supreme Court, the issue was fully and fairly litigated, and the issue was fully resolved.

¶ 62 Finally, we reject appellants' argument that Mr. Youngs' equal protection rights are violated because ICAO Panel members are not subject to the Code of Judicial Conduct. Executive Order No. D 008 01, Strengthening Colorado's Administrative Justice System (May 29, 2001), expressly provides that "all administrative law judges shall adhere to the Colorado Code of Judicial Conduct" to ensure that Colorado's administrative justice system provides efficient and fair resolution of disputes in matters including, but not limited to workers' compensation. *See* Exec. Order No. D 008 01 §§ 1 & 2.

¶ 63 Therefore, we conclude that appellants are precluded from further challenging, on the equal protection grounds asserted here, the constitutionality of the hearing pro-

cess followed by the Division of Workers' Compensation in this case.

¶ 64 The order is affirmed.

Judge J. JONES and Judge KAPELKE * concur.