The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 21, 2019

## 2019COA41

**No. 17CA1591, *Tisch v. Tisch* — Corporations — Officers and Shareholders — Piercing the Corporate Veil — Dividends and Distributions — Derivative Suits — Direct Suits; Civil Theft — Rights in Stolen Property**

In this individual and shareholder derivative suit, a division of the court of appeals decides two issues of first impression in Colorado. First, the division holds that a majority shareholder's use of corporate profits for personal and other business reasons can be submitted to a fact finder and found to constitute "corporate distributions" available to all shareholders when no formal distribution is declared. Second, the division concludes that a minority shareholder has a proprietary interest in undeclared distributions sufficient to support an individual civil theft claim against the majority shareholder.

The division also concludes that (1) appellant waived the expert witness issue; (2) the trial court properly decided the alter ego issue; (3) the trial court properly directed a verdict on the statute of limitations affirmative defenses; and (4) sufficient evidence supports damages. In the cross-appeal, the division concludes that (1) expert fees were properly capped; (2) a contingent fee multiplier for attorney fees is not justified; and (3) the trial court properly entered summary judgment for appellant on the declaratory judgment claim. The division remands the case for the trial court to determine and award appellee reasonable appellate attorney fees related to civil theft.

Court of Appeals No. 17CA1591
Jefferson County District Court No. 16CV30697
Honorable Laura A. Tighe, Judge
Honorable Stephen M. Munsinger, Judge

Daniel E. Tisch and Eva R. Tisch,

Plaintiffs-Appellees and Cross-Appellants,

v.

Gary D. Tisch and The Liquor Barn, Ltd.,

Defendants-Appellants and Cross-Appellees.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE FREYRE
Webb and Román, JJ., concur

Announced March 21, 2019

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado; Mills Schmitz Halstead & Zaloudek, LLC, Michael F. Mills, Denver, Colorado, for Plaintiffs-Appellees and Cross-Appellants

Stinson Leonard Street LLP, Perry L. Glantz, Ryan M. Sugden, Anna Day, Greenwood Village, Colorado, for Defendants-Appellants and Cross-Appellees

¶ 1     In this individual and shareholder derivative action involving a closely held corporation, defendants — the Liquor Barn, Ltd.; and Gary D. Tisch as the officer, director, and controlling shareholder (collectively Gary) — appeal the jury's verdict in favor of plaintiffs and minority shareholders, Daniel E. Tisch and Eva R. Tisch (Tisch siblings). The jury found that Gary had committed civil theft against the Tisch siblings individually and against the Liquor Barn by using the Liquor Barn profits for his private use. It awarded the Tisch siblings $300,000 in damages for civil theft and the Liquor Barn, on whose behalf the Tisch siblings brought a derivative action, zero damages for civil theft. The jury also found that Gary had violated his fiduciary duty to the Liquor Barn and the Tisch siblings. It awarded $150,000 in damages to the Tisch siblings and zero damages to the Liquor Barn for breach of fiduciary duty. The trial court entered judgment against Gary and the Liquor Barn. The court then awarded the Tisch siblings treble damages, totaling $900,000 for the civil theft claim, under section 18-4-405, C.R.S. 2018; $43,837.40 in costs; and $150,000 in attorney fees.

¶ 2     This case asks us to decide two issues not previously resolved by Colorado appellate courts. First, can corporate profits, not

1

formally declared as distributions but used by the controlling shareholder for personal and other business matters, be found by a fact finder to constitute "distributions" to which minority shareholders are entitled a portion? We answer that question "yes" and in doing so affirm the trial court's decision to submit this issue to the jury. Second, can undeclared distributions provide a basis for a minority shareholder to bring an individual claim for civil theft against the majority shareholder? We again answer this question "yes" and hold that minority shareholders have a proprietary interest in undeclared distributions that can form the basis for an individual civil theft claim.

¶ 3    Gary raises five claims of error on appeal, and the Tisch siblings raise three claims of error in their cross-appeal. We affirm the jury's damages awards for the Tisch siblings and the trebling of damages under the civil theft statute. We also affirm the trial court's costs and attorney fees awards. Finally, we conclude that the Tisch siblings are entitled to their reasonable appellate attorney fees related to the civil theft claim and remand the case for that determination.

## I.   Background

¶ 4    This is a dispute over a family business — the Liquor Barn — that was incorporated in 1975 by the parties' father, Rudolph Tisch (father).  In 1982, father gave each of his three children 1600 shares of the Liquor Barn stock and kept the remaining 10,500 shares of stock for himself.  Between 1982 and 1991, Gary was the Liquor Barn's floor manager, and after 1991, Gary assumed responsibility for the company's books and for managing the inventory.  The Tisch siblings worked sporadically at the business between 1991 and 1997, but they were never involved in the business' operations.

¶ 5    Father divorced in 1991 and a domestic court entered a dissolution decree that required him to transfer an additional 10% ownership in the Liquor Barn — 1530 shares — to each of his three children.  The children knew of this order, but father never transferred the additional shares.  On November 17, 1997, father amended the articles of incorporation — without notice to his children and without a shareholder vote — to recapitalize the business.  This amendment exchanged one share of common stock for 7/10 of a class A voting share and 3/10 of a class B nonvoting share.  Consequently, each of the children's 1600 shares of

common voting stock were cancelled, and each child was re-issued 1500 shares of class B nonvoting common stock, while father retained all the class A voting stock.

¶ 6 In December 2000, father assigned his stock in the Liquor Barn to Gary, and Gary managed the business. Gary held 10,500 class A voting shares and 1500 class B nonvoting shares, while the Tisch siblings each held 1500 class B nonvoting shares.

¶ 7 On November 19, 2003, Gary's attorney received a letter from the Tisch siblings' attorney with an offer to sell each siblings' 10% nonvoting shares of stock. No sale occurred.

¶ 8 Approximately one year later, the Tisch siblings, through counsel, demanded access to the Liquor Barn's financial and corporate records in connection with a dispute over father's estate. Gary made the records available, but the Tisch siblings never examined them because they could not afford to hire an accountant. They made similar inspection requests for the purpose of valuing their shares between 2004 and 2014, but they never examined the records because of financial constraints. After Eva Tisch received funds in connection with an estate dispute in 2011,

the Tisch siblings had the financial means to determine the value of their stock.

¶ 9    So, on April 3, 2015, the Tisch siblings made another request to examine the Liquor Barn's records, and this time they hired an accountant, Matthew Lausten, to conduct that examination. On April 29, 2016, they filed a complaint that asserted eight causes of action: (1) declaratory judgment; (2) accounting; (3) alter ego; (4) fraud; (5) an individual claim for civil theft; (6) a shareholder derivative claim for civil theft; (7) an individual claim for breach of fiduciary duty; and (8) a shareholder derivative claim for breach of fiduciary duty.

¶ 10    Before trial, the court partially granted Gary's motion for summary judgment and dismissed the declaratory judgment and fraud claims as barred by applicable statutes of limitations. At a case management conference, the trial court capped expert fees at $35,000, and capped recoverable costs at $7000 under C.R.C.P. 16(b)(11). It permitted either side to seek relief from the caps by motion.

¶ 11    The Tisch siblings presented their case primarily through Mr. Lausten, who by then had reviewed all of the Liquor Barn's financial

records. Mr. Lausten noted that the Liquor Barn's gross revenues steadily increased between 2004 and 2016, but that these revenues had not translated into increased profits. After further examination, Mr. Lausten identified several other businesses owned by Gary and found that the Liquor Barn had paid for many of these other business' expenses over the years. He opined that the Liquor Barn profits, which had been used by Gary personally or for his other businesses, should be reclassified as shareholder distributions and booked as retained earnings or distributed as dividends.

¶ 12 In particular, Mr. Lausten noted that insufficient receipts supported the QuickBooks expense entries and that the receipts that existed often did not identify the entity for which the expense had been incurred. He further noted that the Liquor Barn's records conflicted with the supporting documentation for intercompany transactions, expense reimbursements, and general operating expenses. Moreover, Mr. Lausten testified to strong indications that some of the Liquor Barn's inventory had been sold "off-book," and he said that Gary would have been able to do this. In the end, he opined that Gary had received between $600,000 and $1.1 million

beyond his reported salary from 2010-2016 and that this additional income should be reclassified as shareholder distributions. After conducting a comparative analysis, he opined that the Liquor Barn lost profits of $2,172,436 over a fifteen-year period.

¶ 13     Gary testified and provided explanations for the discrepancies observed by Mr. Lausten. He said that as the sole director and majority shareholder, he had never made a distribution or declared a dividend; instead, he had focused his efforts on growing the business. He disputed Mr. Lausten's profit figures and described his efforts to remain competitive when laws changed that allowed retail liquor sales in grocery stores. The court precluded him from presenting his endorsed accounting expert, Catherine Moeller, because she admitted having altered the Liquor Barn's records after Mr. Lausten's initial review and had based her opinions on those altered records.

¶ 14     Gary raised the statute of limitations as an affirmative defense to civil theft and breach of fiduciary duty in his pleadings and in a motion for a directed verdict at the close of the evidence. He argued that the Tisch siblings either knew or reasonably should have known of their injuries in connection with previous requests to

inspect the Liquor Barn's records. The trial court disagreed and entered a directed verdict for the Tisch siblings, finding that no jury would conclude that the suit was filed outside the statute of limitations. The court also ruled against Gary on the alter ego claim, which had been tried to the court, finding that Gary and the Liquor Barn were alter egos of one another.[1]

¶ 15     After the jury's verdict, the court awarded the Tisch siblings treble damages on the civil theft claim and entered judgment against Gary and the Liquor Barn on April 20.[2] Gary moved to amend the judgment, contending that the court erred in piercing the corporate veil and that this error would prejudice the Liquor Barn's creditors. He then filed a combined motion for new trial and relief from judgment, arguing, as relevant here, that the trial court erred in disqualifying his expert witness and in piercing the corporate veil.

---

[1] The accounting claim was dismissed as moot after the jury returned a verdict for damages.

[2] Prior to final judgment being entered, on April 7, 2017, Gary filed for bankruptcy (Chapter 11 reorganization).

¶ 16 After receiving relief from a stay in Gary's bankruptcy, the trial court held a hearing and denied the postjudgment motions.[3] It also ordered the Tisch siblings to submit a lodestar amount for attorney fees. The court awarded costs of $43,837.50 ($35,000 in expert fees and $8837.50 in general litigation costs), and $150,000 in attorney fees, which exceeded the lodestar.

## II. Gary's Direct Appeal

¶ 17 Gary challenges the judgment on five grounds: (1) the court erroneously excluded his accounting expert; (2) the court erroneously found that the Liquor Barn and Gary were alter egos; (3) the court erroneously directed a verdict on his statute of limitations affirmative defense and wrongfully imposed treble damages for civil theft beyond the one-year statute of limitations; (4) the court erroneously submitted the individual civil theft claim to the jury because the Tisch siblings failed to show a sufficient property interest in undeclared distributions; and (5) insufficient evidence supported the jury's damage award. We reject his contentions and affirm the judgment.

---

[3] The bankruptcy court's stay relief order encompasses this direct appeal.

9

## A.    Exclusion of Expert Witness

¶ 18    Gary first contends that the trial court erroneously excluded his expert accountant's testimony based on her alteration of the Liquor Barn's financial records.  He argues that the court was required to hold a hearing, under *People v. Shreck*, 22 P.3d 68, 70 (Colo. 2001), to assess the reliability of her testimony.  He reasons that any inconsistencies went to the weight of her testimony and not to its admissibility.

¶ 19    Gary never asked the court for a *Shreck* hearing and he conceded in closing argument that the court had "properly ruled" that she should not be allowed to testify.  Under these circumstances, we conclude that these issues were not preserved for our review.  *Vititoe v. Rocky Mountain Pavement Maint., Inc.*, 2015 COA 82, ¶ 60 (failure to raise issues waives them on appeal); *see also In re Marriage of Robbins*, 8 P.3d 625, 630 (Colo. App. 2000) (A party affects an express waiver "when [that] party states its intent to abandon an existing right.").

## B.    Piercing the Corporate Veil

¶ 20    Gary next contends that the trial court erroneously found that he, as an individual, and the Liquor Barn were "alter egos."  He also

argues that the court improperly employed "inside reverse veil piercing" to hold the Liquor Barn liable for Gary's debts. We discern no error in the court's alter ego determination, and we conclude that his inside reverse veil piercing argument was not preserved for our review. *Vititoe*, ¶ 60.

### 1.    Additional Facts

¶ 21    Before trial, the parties agreed to try the alter ego claim to the court. At the end of the evidence, the court found as follows:

> Well, I don't think it really matters, because whether it's an ex – if it's an alter ego, or it's not an alter ego, the claim's against this gentleman [Gary]. And he's the – the president, managing shareholder, whole – sole shareholder of any voting stock. So he is the alter ego, realistically. So I find he is the alter ego. Is there any – do you want to argue that with me?

¶ 22    Gary's counsel responded, "it – it's moot, Your Honor." Counsel for the Tisch siblings disagreed it was moot, so the court made further findings:

> I find the elements of alter ego. I find he is the alter ego, they're one and the same for the purp – for this purpose.
>
> . . . .

11

He still has corporate shield and everything else.  The corporation is a valid corporation.  But he's – he is the sole controller of the corporation. . . .  I'm – you know, as to the purposes of this case, and given the parties in this case, and the way it's lined up, I am piercing the corporate shield as to him, in – as [to] these claimed damages.

¶ 23    Gary moved to amend the judgment, but he only argued that the alter ego determination was erroneous because an equitable result would not be achieved by piercing — he never argued the court's ruling constituted inside reverse veil piercing.

### 2.    Standard of Review and Relevant Law

¶ 24    Piercing the corporate veil and imposing liability for corporate obligations on the shareholders is an equitable remedy.  *Gorsich v. Double B Trading Co.*, 893 P.2d 1357, 1362 (Colo. App. 1994).  Whether to exercise the equitable remedy and pierce the corporate veil is a mixed question of law and fact.  *See Stockdale v. Ellsworth*, 2017 CO 109, ¶ 17.  "We defer to the trial court's findings of fact if they are supported by the record, but [we] review the trial court's legal conclusions de novo."  *Id.* (quoting *People v. Marquardt*, 2016 CO 4, ¶ 8).

¶ 25     Generally, a duly formed corporation is a separate legal entity, distinct from its officers and shareholders. *Micciche v. Billings*, 727 P.2d 367, 372 (Colo. 1986). However, the corporate form may be disregarded by piercing the corporate veil when the corporation is merely the alter ego of the shareholder. *In re Phillips*, 139 P.3d 639, 644 (Colo. 2006). Traditional piercing of the corporate veil imposes liability on individual shareholders for the obligations of the corporation. *Id.* Reverse piercing of the corporate veil holds the corporation liable for the debts of a corporate insider. *Id.* at 645.

¶ 26     To determine whether sufficient unity of interest exists to establish alter ego, courts consider several factors, including whether

> (1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a "mere shell," (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes.

*Id.* at 644.

13

¶ 27    A court may reverse pierce the corporate veil only upon a clear showing by the requesting party of all the following factors: (1) the controlling insider and the corporation are alter egos of each other; (2) justice requires recognizing the substance of the relationship over the corporate form because the corporate form is used to perpetuate a fraud or to defeat a rightful claim; and (3) an equitable result is achieved by piercing. *Id.* at 646.

### 3.    Application

¶ 28    We perceive no error in the trial court's decision to pierce the corporate veil because ample record evidence supports that decision. First, the record shows that (1) Gary commingled his personal funds with the Liquor Barn's funds and with his other companies' funds in a way that made it unclear which funds belonged to whom; (2) Gary's individual position as the controlling and sole voting shareholder facilitated his misuse of the Liquor Barn's funds (as evidenced by the Liquor Barn paying his personal expenses, personal loans, and the expenses of his other companies); (3) Gary kept inadequate corporate records, including insufficient receipts and insufficient descriptions in QuickBooks; (4) the Liquor Barn was thinly capitalized because it had little to no retained

14

earnings; (5) Gary routinely disregarded the legal formalities of declaring shareholder distributions and filing taxes related to payments made to himself; and (6) corporate funds and assets were used for noncorporate purposes, such as inventory for a different company, a trip to Belize, and dinners.

¶ 29 Second, the record shows that Gary used the corporate fiction to defeat the Tisch siblings' rightful claims to distributions and, thus, that justice requires recognizing the substance of the relationship between Gary and the Liquor Barn over the corporate form. Indeed, the evidence demonstrates that Gary paid personal loans with corporate funds, and that he diverted the Liquor Barn's profits to his other companies. By classifying these payments from the Liquor Barn to himself as nondistributions, he avoided paying the Tisch siblings their 20% interest.

¶ 30 Third, we conclude that piercing the corporate veil achieves an equitable result. Because Gary commingled his funds with the Liquor Barn's, it is unclear which funds belong to Gary individually and which belong to the Liquor Barn. Therefore, the Tisch siblings should be able to collect from both. Further, there are no innocent shareholders who would be harmed by enforcing the judgment

against the Liquor Barn because Gary and the Tisch siblings are the only shareholders. *Cf. id.* (stating that an equitable result is not achieved if innocent shareholders are harmed); *see generally* Kurtis A. Kemper, Annotation, *Acceptance and Application of Reverse Veil-Piercing — Third-Party Claimant*, 2 A.L.R. 6th 196 (2005) (noting that the corporate entity will not be disregarded if it would result in "prejudice to the rights of innocent third parties"). And, although creditors may be impacted, we conclude the trial court properly considered creditors when it held that alternate adequate remedies were not available and that equity for the Tisch siblings and creditors required piercing the corporate veil. *See In re Phillips*, 139 P.3d at 646-47.

C.    Time Bars and Basis for Direct Civil Theft

¶ 31    Gary next contends that the statute of limitations bars the civil theft and breach of fiduciary duty claims. Alternatively, as to civil theft, he argues that, even if not barred, the Tisch siblings had no "proprietary interest" in the diverted funds since he never declared a distribution. Therefore, he reasons, no basis for civil theft exists. We are not persuaded.

16

### 1. Statute of Limitations and Excluded Evidence

¶ 32  Gary argues three errors related to the statute of limitations: (1) excluding letters from 2003 and 2004; (2) directing a verdict on his affirmative defense; and (3) awarding treble damages for civil theft that occurred outside the one-year statute of limitations. We perceive no error in the court's rulings.

#### a. Standard of Review and Preservation

¶ 33  We review a trial court's decision to exclude evidence for an abuse of discretion. *In re Estate of Fritzler*, 2017 COA 4, ¶ 6. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *Id.*

¶ 34  We review a trial court's ruling on a directed verdict de novo. *MDM Grp. Assocs., Inc. v. CX Reinsurance Co.*, 165 P.3d 882, 885 (Colo. App. 2007). Such a motion can be granted only if the evidence compels the conclusion that reasonable jurors could not disagree because no evidence received at trial, or inference therefrom, could sustain a verdict against the moving party. *Id.* The trial court must view the evidence in the light most favorable to the nonmoving party. *Id.*

¶ 35 Similarly, we review statutes de novo. *Miller v. Hancock*, 2017 COA 141, ¶ 24. We give words and phrases their plain and ordinary meanings. *Id.* "If a statute is clear and unambiguous on its face, then we need not look beyond the plain language, and 'we must apply the statute as written.'" *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2001) (citations omitted).

¶ 36 Initially, we reject the Tisch siblings' contention that the directed verdict and treble damages issues were not preserved. The record reflects that the trial court directed a verdict on the statute of limitations affirmative defense over Gary's objection. And, it shows that Gary raised the statute of limitations as an affirmative defense to treble damages in his amended answer and in the proposed case management order. Therefore, we address these issues.

b. Analysis

¶ 37 We begin with Gary's contention that the statute of limitations barred submission of the civil theft claim to the jury because our resolution of this issue necessarily resolves the evidentiary issue. Gary relied on the Tisch siblings' previous requests to inspect the Liquor Barn's books and, in particular, letters from 2003 and 2004,

18

to show that the Tisch siblings either knew or reasonably should have known of their injuries from his alleged breach of fiduciary duty and civil theft at the time of those requests.[4]  Gary's counsel attempted to introduce the letters written by the Tisch siblings' attorney to support his claim that the Tisch siblings filed this suit beyond the two-year statute of limitations for tort claims, § 13-80-102(1)(a), C.R.S. 2018, and the three-year statute of limitations for a breach of fiduciary duty claim, § 13-80-101(1)(f), C.R.S. 2018. Both letters concerned settlement negotiations related to father's estate in which the Tisch siblings offered to sell their shares to Gary and neither letter mentioned Gary's management of the Liquor Barn.  Both siblings testified that their inspection requests related to determining the value of their shares for possible sale and that they could not afford to retain an accountant to review the records until 2015.

¶ 38     Even considering the contents of the two letters, we conclude that no evidence establishes that the Tisch siblings knew or reasonably should have known of Gary's alleged mismanagement or

---

[4] Gary also relied on an inspection request from 2012, and the jury received evidence of this request.

19

of their injuries before Mr. Lausten's inspection. Gary asks us to infer knowledge of mismanagement from the existence of a family dispute over estate matters; however, he does not identify the record evidence from which we could draw this inference since the letters do not allege or even mention mismanagement. Indeed, the Tisch siblings unequivocally testified that they never suspected Gary's mismanagement until Mr. Lausten's inspection. And Gary did not refute this with his own testimony of any prior accusations of mismanagement.

¶ 39 Moreover, Gary has not cited, nor are we aware of, any Colorado authority holding that a minority shareholder has an affirmative duty to examine corporate records to discover potential violations by a majority shareholder. *Cf. Left Hand Ditch Co. v. Hill*, 933 P.2d 1, 5 (Colo. 1997) ("Shareholders have a common law *right* to inspect the books and records of the corporation.") (emphasis added); *Van Schaack Holdings, Ltd. v. Van Schaack*, 867 P.2d 892, 897-98 (Colo. 1994) (explaining that majority shareholders have an affirmative duty to disclose material facts relating to the value of stock to minority shareholders, but saying nothing about a minority shareholder's duty to discover information independently).

Therefore, we agree with the trial court that the timing of the Tisch siblings' knowledge of their injuries was not subject to reasonable debate. And by filing their complaint on April 29, 2016, they were well within the relevant two- and three-year statute of limitations periods for both civil theft and breach of fiduciary duty. *See MDM Grp. Assocs.*, 165 P.3d at 885 (directed verdict appropriate where no reasonable juror could disagree).

¶ 40     Because we conclude that the trial court properly directed a verdict on the statute of limitations affirmative defense, we need not decide whether it erred in precluding the admission of the letters under CRE 408. Even if we assumed the court erred, Gary has not explained how the letters were relevant, except to the statute of limitations, an argument that we have already rejected. *See* CRE 402 ("Evidence which is not relevant is not admissible."); *Neher v. Neher*, 2015 COA 103, ¶ 33 ("An appellate court can affirm a trial court's ruling for any reason supported by the record, even if that reason was not argued to, or addressed by, the trial court.").

¶ 41     Finally, we conclude that the treble damages award was not barred by the one-year statute of limitations. As relevant here, a party who prevails on a civil theft claim "may recover two hundred

dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees." § 18-4-405. But section 13-80-103(1)(d), C.R.S. 2018, provides as follows:

> (1) The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within one year after the cause of action accrues, and not thereafter:

> (d) All actions for any penalty or forfeiture of any penal statutes[.]

¶ 42     Gary argues that Mr. Lausten's receipt of the corporate records on April 15, 2015, started the one-year limitations period and required the Tisch siblings to file their civil theft claim by April 15, 2016, in order to seek treble damages. He reasons that this undisputed evidence conclusively establishes that the Tisch siblings knew or reasonably should have known of the facts underlying their civil theft claim on April 15, and that their claim, filed on April 29, 2016, was time barred. *See* § 13-80-108(1), C.R.S. 2018 (A cause of action accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence."); *Miller v. Byrne*, 916 P.2d 566, 582 (Colo. App. 1995)

22

(same). We disagree because the record shows that Gary failed to elicit any evidence concerning when the Tisch siblings either knew or reasonably should have known the facts underlying their civil theft claim and, thus, that he did not meet his burden of proof. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1057 (Colo. 1992) ("The burden of proving an affirmative defense rests upon the defendant asserting the defense."); *see also Wagner v. Grange Ins. Ass'n*, 166 P.3d 304, 307 (Colo. App. 2007) (noting that whether a claim is time barred is a question of fact unless the undisputed facts show the plaintiff had or should have had the requisite information on a particular date).

¶ 43    Mr. Lausten testified that he received the corporate records in April 2015, but Gary's counsel never asked timing-related questions on cross-examination, such as when Mr. Lausten began reviewing the records, when he first noticed evidence of mismanagement, or when he first discovered evidence to support civil theft. Further, although Gary's counsel attempted to elicit the Tisch siblings' suspicions of Gary's mismanagement during the prior estate proceedings, both siblings denied any suspicions of mismanagement and said they first learned of mismanagement

23

following Mr. Lausten's review.  Notably, neither sibling was impeached on this issue.  *See Salazar v. Am. Sterilizer Co.*, 5 P.3d 357, 363 (Colo. App. 2000) (finding that mere suspicion "does not necessarily put a reasonable person on notice of the nature, extent, and cause of an injury").  Indeed, Gary testified that he provided all records to Mr. Lausten on April 15, 2015.  But, he never described any conversations or disagreements with the Tisch siblings concerning his management of the business over the years.

¶ 44    On this record, we conclude that Gary failed to produce sufficient evidence of a period during which the Tisch siblings knew or reasonably should have known "of the general nature of damage and that the damage was caused by [Gary's] wrongful conduct." *Colburn v. Kopit*, 59 P.3d 295, 297 (Colo. App. 2002).  Gary does not cite, nor are we aware of, any authority holding that an expert's mere receipt of records establishes reasonable knowledge or begins the running of the statute of limitations.

¶ 45    Accordingly, we discern no error in the trial court's award of treble damages.

24

## 2. Sufficient Evidence Supports Individual Civil Theft Claim

¶ 46    Gary next contends that the Tisch siblings never had a property interest in the Liquor Barn's profits — because he never declared a shareholder distribution — and that they, therefore, had no valid civil theft claim against him.  He reasons that because a shareholder is entitled only to a corporation's profits and not its divisible assets, the Tisch siblings had no standing to assert civil theft.  We disagree and, instead, conclude that whether Gary's payments to himself and his other entities constituted a "distribution of profits" payable to all shareholders — from which he wrongfully withheld the Tisch siblings' share — was a factual question for the jury.

### a.    Standard of Review

¶ 47    Although the parties briefed the issue based on denial of Gary's partial summary judgment motion, "[a] denial of a motion for summary judgment is not a final determination on the merits and, therefore, is not an appealable order."  *Karg v. Mitchek*, 983 P.2d 21, 25 (Colo. App. 1998).  Nor is such a denial appealable after a final judgment.  *Id.*

¶ 48     Instead, to preserve an issue raised in a denied motion for summary judgment, a party must raise the issue in a motion for a directed verdict or judgment notwithstanding the verdict during trial. *See Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1249 (Colo. 1996). Put differently, the party must give the trial court an opportunity to rule on the issue as a matter of law at trial. *See generally Bd. of Cty. Comm'rs v. Rodgers*, 2015 CO 56, ¶ 14 (summary judgment and directed verdict employ the same standard — judgment as a matter of law).

¶ 49     Here, Gary preserved this argument when he reraised it during trial and sought a directed verdict on the civil theft claim. The court denied the motion and the question whether the Tisch siblings alleged a sufficient basis for civil theft was submitted to the jury.

¶ 50     Directed verdicts are disfavored. *Langlois v. Bd. of Cty. Comm'rs*, 78 P.3d 1154, 1157 (Colo. App. 2003). A directed verdict should be entered only where the evidence, considered in the light most favorable to the nonmoving party, "compels the conclusion that reasonable people could not disagree and that no evidence, or legitimate inference from the evidence, has been presented upon

which a jury verdict against the moving party could be sustained."
*Id.* We review rulings on directed verdict motions de novo. *Park Rise Homeowner's Ass'n v. Res. Constr. Co.*, 155 P.3d 427, 431 (Colo. App. 2006).

b.     Relevant Law

¶ 51     Section 18-4-405 provides independent civil remedies to an owner of stolen property and requires that all property obtained by theft, robbery, or burglary be returned to the owner. *See In re Marriage of Allen*, 724 P.2d 651, 658 (Colo. 1986). Civil theft requires the proof of two elements: (1) the defendant knowingly obtained control over the plaintiff's property without authorization and (2) the defendant did so with the specific intent to permanently deprive the plaintiff of the benefit of the property. *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 509 (Colo. App. 2009); *see* § 18-4-401(1), C.R.S. 2018 (theft); § 18-4-405 (rights in stolen property). Property or money belongs to another if anyone other than the defendant has a possessory or proprietary interest in it. § 18-4-401(1.5).

¶ 52     A "proprietary interest" is an ownership interest in the subject property. *See* Webster's Third New Int'l Dictionary 1819 (2002)

27

("proprietary" means "held as the property of a private owner"); Black's Law Dictionary 934, 1280 (10th ed. 2014) ("interest" is a legal or equitable claim to or right in property; "ownership" implies the right to possess a thing, regardless of any actual or constructive control).

¶ 53     On the one hand, an alleged victim's status as a creditor of a debtor defendant, without more, does not establish that such person has a proprietary interest in any specific property. *See, e.g.*, *People v. Rotello*, 754 P.2d 765 (Colo. 1988) (landlord did not own money that represented payment for beverages sold to others, even though rent was calculated based on gross income tenant allegedly had failed to report); *Kelley v. People*, 157 Colo. 417, 419, 402 P.2d 934, 935 (1965) (where the defendant was not an employee for the collection of funds and was not obligated to hold specific funds for the purpose of paying the gasoline company for gasoline he sold, the defendant merely owed money to the company and his nonpayment did not constitute theft).

¶ 54     But on the other hand, once a dividend is declared, a shareholder has the right to that money in his or her individual capacity. *Erdman v. Yolles*, 233 N.W.2d 667, 669 (Mich. Ct. App.

1975); *see Cowin v. Bresler*, 741 F.2d 410, 415 (D.C. Cir. 1984) ("Wrongful withholding of dividends, for example, gives rise to an individual cause of action. . . . Because dividends are an incident of stock ownership, an action to compel the payment of dividends will not inure to the benefit of the corporation . . . ."); 12B *Fletcher Cyclopedia of the Law of Corporations* § 5922, Westlaw (database updated Sept. 2018) ("A shareholder may sue the corporation or its officers to recover a dividend after it has been declared, since the shareholder then has a right to the money in an individual capacity."). But what is a shareholder's interest in corporate profits misappropriated by a person who could have declared a distribution?

¶ 55     Of course, a corporate shareholder may not bring a direct action against a director or other third party whose action causes harm to the corporation. Instead, either the corporation itself, or a shareholder acting on behalf of the corporation in a derivative action under C.R.C.P. 23.1, must pursue such a claim. *See Box v. Roberts*, 112 Colo. 234, 238, 148 P.2d 810, 812 (1944); *River Mgmt. Corp. v. Lodge Props. Inc.*, 829 P.2d 398, 403 (Colo. App. 1991). Still, in limited circumstances, a shareholder may bring a personal

action against a corporation where the shareholder has sustained an injury separate and distinct from that of the corporation or the other shareholders. For example, a division of this court implicitly recognized that a breach of fiduciary duty allegation against majority shareholders who distributed corporate profits in the form of a "bonus" to a majority shareholder, rather than as a "dividend" to all shareholders, created a question of fact. *See Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402, 405 (Colo. App. 2000) (reversing summary judgment on breach of fiduciary duty claim). But no Colorado case has considered whether profits, misused by a controlling shareholder in a closely held corporation, can be reclassified as "distributions" to form the basis for a minority shareholder's individual civil theft claim. So, we look for guidance to cases in other jurisdictions that have addressed this issue.

¶ 56    In *Erdman,* 233 N.W.2d at 668, four hairdressers each owned a 25% interest in their corporation. The plaintiff stopped working at the business, but he retained his 25% interest in it. *Id.* After the plaintiff's departure, the other three shareholders liquidated corporate investments, which had been made during the plaintiff's active service, and distributed the proceeds among themselves as

retroactive pay increases and bonuses. *Id.* The plaintiff filed suit seeking damages for the defendants' alleged wrongful depletion of corporate assets. *Id.* Following a bench trial, the trial court awarded the plaintiff 25% of the proceeds and found that "the conduct of the three principal defendants 'in cashing in previously acquired assets, and then distributing them, amounts to the payment of a dividend, from which the plaintiff was denied his one-fourth (1/4) share.'" *Id.* at 669. The court of appeals affirmed the trial court's finding that corporate profits had been distributed through salary increases and bonuses and held that the distribution of profits in this manner "constituted a dividend, whether denominated such or not." *Id.*

¶ 57 Similarly, in *Lengsfield v. Commissioner*, 241 F.2d 508, 509 (5th Cir. 1957), an income tax deficiency case involving majority shareholders who were close relatives and drew large salaries from the corporation, the tax court was tasked with deciding whether monthly payments from the corporation to these shareholders constituted "distributions of corporate earnings," taxable to the recipients, or whether they were "gratuities paid with donative intent," not subject to taxation. *Id.* at 509-10. The tax court

concluded the payments constituted dividends subject to taxation. *Id.* The appellate court agreed and found that "whether or not a corporate distribution is a dividend or something else . . . presents a question of fact to be determined in each case." *Id.* at 510. It rejected the shareholders' argument that the corporation's characterization of the payments as a "gratuity" for past services rendered was determinative and, instead, concluded that "there is no requirement that a particular distribution be termed a dividend, or that there be a formal dividend declaration . . . ." *Id.* at 511.

¶ 58    As well, in *Murphy v. Country House, Inc.*, 349 N.W.2d 289, 292 (Minn. Ct. App. 1984), the Minnesota Court of Appeals relied in part on *Erdman* to hold that corporate profits paid as bonuses to select shareholders of a closely held corporation in years of surplus profits constituted dividends to which all shareholders were entitled their proportionate share. Noting the absence of record evidence establishing any link between performance and the payment of the alleged bonuses, the court found that "the corporation instead distributed 'bonuses' only when fiscal reports showed sufficient income in the prior years." *Id.* It held that "[a]lthough the Board neither classified the payments as dividends nor distributed the

32

monies ratably according to each shareholder's interest, it effectively paid dividends to some of its shareholders during its years of surplus profits." *Id.* at 293.

¶ 59 Courts in other jurisdictions have similarly held that distributed corporate profits not formally declared as dividends in fact constituted dividends and formed the basis for a direct claim. *See, e.g., Hanson v. Kake Tribal Corp.*, 939 P.2d 1320, 1322 (Ala. 1997) (payments under a financial security plan to select shareholders constituted a "dividend" to which all shareholders were entitled); *Alliegro v. Pan Am. Bank,* 136 So. 2d 656, 659-61 (Fla. Dist. Ct. App. 1962) ("[T]he mere fact that the distributions are not called 'dividends' by the board of directors of the corporation does not detract from such distributions being dividends."); *see also Stephenson v. Plastics Corp. of Am.,* 150 N.W.2d 668, 676 (Minn. 1967) ("In determining whether a transaction constitutes a 'dividend,' consideration must be given to the context in which the term dividend is used; the consequences that turn upon the answer to the question; and the facts of the particular case.").

### c. Application

¶ 60    In their complaint, the Tisch siblings alleged that Gary had drained the Liquor Barn's profits through unauthorized loan payments, payments on personal credit cards, and payments to himself as an hourly employee, vendor, and officer.  They asserted that Gary exercised complete control over these distributions, that these funds constituted profits that Gary distributed to himself although they were entitled to a 20% share, and that Gary acted with the intent to permanently deprive them of their interest in these profits.

¶ 61    First, we reject Gary's contention that civil theft was not cognizable because he had the sole discretion, as the majority shareholder, to authorize distributions, but he never did so.  Instead, we agree with the trial court and the authorities cited above that whether the diversion of corporate profits constitutes a distribution is a question of fact.  Here, the court instructed the jury that a distribution was a "direct or indirect transfer by [a] corporation of money or other property, . . . to or for the benefit of any of its shareholders in respect of any of its shares" that could be "in any form, including a declaration or payment of a dividend; a

purchase, redemption, or other acquisition of shares; or distribution of indebtedness." It also instructed the jury that to find civil theft, it had to conclude that Gary obtained control over the Tisch siblings' 20% share of distributions, which in turn required the jury to find that the diverted profits constituted distributions to which the Tisch siblings were entitled. In finding for the Tisch siblings, the jury necessarily determined that the proceeds Gary spent on his other businesses and personal expenses constituted distributions in which the Tisch siblings were entitled to share.

¶ 62 We further conclude that the Tisch siblings had a distinct, proprietary interest in their share of these undeclared distributions that allowed them to bring an individual claim against Gary for civil theft. *Compare Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1195 (Colo. App. 2008) ("An action will lie for the conversion of money where there is an obligation to return or otherwise particularly treat *specific money*.") (emphasis added), *with Huffman*, 205 P.3d at 509 (explaining that an employee with stock options has no presently enforceable property right for a civil theft claim where the stock options are not presently enforceable); *Ladd v. Ladd Constr., LLC*, No. TTDCV074007051S, 2008 WL 4416048, at *1 (Conn. Super. Ct.

Sept. 15, 2008) ("If a member or manager of a limited liability company commits a tortious act while on company business, he may be personally liable to an injured party."); *Moore v. Me. Indus. Servs., Inc.*, 645 A.2d 626, 630 (Me. 1994) (concluding that where the majority shareholders paid dividends only to themselves and excluded a minority shareholder from receiving dividends from a line of credit, the minority shareholder had a direct cause of action against the majority shareholders); *Erdman*, 233 N.W.2d at 669 (the failure to share distributions of profits constituted a proper basis for a direct action by the minority shareholder).

¶ 63 "The distinction between derivative and direct claims turns primarily on whether the breach of duty is to the corporation or to the shareholder(s) and whether it is the corporation or the shareholder(s) that should appropriately receive relief." *In re Ionosphere Clubs, Inc.*, 17 F.3d 600, 605 (2d Cir. 1994). Particularly for closely held corporations, it is important for the fact finder to determine whether diverted funds are actually distributions, because if only a derivative suit is permitted, the damages recovered simply revert to the wrongdoer. *See Lynch v. Patterson*, 701 P.2d 1126, 1130 (Wyo. 1985) (awarding damages to

a minority shareholder individually on a shareholder derivative claim and explaining that courts should permit direct recovery "to prevent an award from reverting to the wrongdoers who remain in control of the corporation").

¶ 64 Finally, we are not persuaded by Gary's argument that no civil theft occurred because his actions were done "with authorization." The Tisch siblings never disputed Gary's authority to declare or not declare dividends. They simply alleged that his decision to use the Liquor Barn profits for personal and other business matters constituted a distribution that entitled them to a share of the funds distributed. Because a majority shareholder *must* share dividends with minority shareholders, Gary was not authorized to keep 100% of the distributions of the Liquor Barn's profits, and his decision to do so constituted civil theft. *See Erdman*, 233 N.W.2d at 669 (once dividends are declared a shareholder has a right to his or her portion of dividends).

¶ 65 In the end, and because Gary had the power to make distributions and declare dividends, we conclude that whether the diverted profits constituted a distribution in which the Tisch siblings had a proprietary interest was a question for the jury.

Thus, we affirm the court's denial of Gary's motion for directed verdict on the individual civil theft claim.

## D. Sufficiency of Damages

¶ 66 Gary next contends that insufficient evidence supports the jury's total $450,000 damages award. Alternatively, he contends that the civil theft claim should be modified so that the Tisch siblings receive 20% of the $300,000 damage award. We discern no error.

### 1. Standard of Review

¶ 67 Determining the amount of damages is within the jury's discretion. *Palmer v. Diaz,* 214 P.3d 546, 552 (Colo. App. 2009). "[A]bsent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." *Higgs v. Dist. Court,* 713 P.2d 840, 860-61 (Colo. 1985) (quoting *Hurd v. Am. Hoist & Derrick Co.,* 734 F.2d 495, 503 (10th Cir. 1984)). An appellate court "will not disturb an award of damages unless it is completely unsupported by the record." *Averyt v. Wal-Mart Stores, Inc.,* 265 P.3d 456, 462 (Colo. 2011). That said, "a

damage award may not be based on speculation or conjecture."
*Logixx Automation, Inc. v. Lawrence Michels Family Tr.*, 56 P.3d 1224, 1227 (Colo. App. 2002).

¶ 68     We reject the Tisch siblings' assertion that Gary did not preserve this issue because "the reasonableness of an award is always subject to judicial scrutiny in the post-trial and appellate stages of a case." *Averyt*, 265 P.3d at 462.

## 2.     Analysis

¶ 69     Gary asserts that no evidence shows that he stole $300,000 in distributions from the Tisch siblings because no evidence established the portion of hypothetical lost profits that should have been distributed as dividends. We disagree and conclude that he misapprehends the jury's findings. The jury found that Gary took funds for himself and his other companies, which it concluded constituted "distributions," and that he failed to share 20% of those distributions with the Tisch siblings.

¶ 70     Mr. Lausten performed a comparative analysis to estimate the Liquor Barn's total lost profits. Based on these comparisons, he opined that the Liquor Barn experienced $2,172,436 in lost profits over a fifteen-year period. Twenty-percent of that amount —

representing each Tisch siblings' 10% share — is $434,487, which is approximately $15,000 less than the jury's award of $450,000. In our view, this is not a gross deviation from an acceptable amount, and it is not so excessive as to shock the judicial conscience. *See Higgs*, 713 P.2d at 860-61.

¶ 71 Nor are we persuaded that the $300,000 award for civil theft should be reduced to $60,000 — or 20% of the total award. We disagree that the $300,000 award represents total distributions because the record shows total lost profits of approximately $2.2 million. Therefore, the $300,000 award reasonably reflects the portion of total profits that the jury believed the Tisch siblings should have received as a distribution.[5]

## III. Cross-Appeal

¶ 72 The Tisch siblings raise three contentions in their cross-appeal: (1) the cap on expert witness fees was arbitrary; (2)

---

[5] Although not separately raised by Gary, we acknowledge the discrepancy in the damages awarded for civil theft and breach of fiduciary duty. This discrepancy is supported by the court's damages jury instruction for breach of fiduciary duty requiring the jury to consider "[a]ny loss of profits or income which plaintiffs could reasonably have expected to earn had the fiduciary duty not been breached."

the court should have based attorney fees on the trebled damages amount rather than on the jury's verdict; and (3) the court erroneously granted summary judgment for Gary on their declaratory judgment claim. We consider and reject each of these contentions.

## A. Expert Witness Fee Cap

¶ 73 The parties originally submitted a proposed case management order that did not include a fee cap. According to the minute orders, the trial court conducted a one-hour hearing on this proposed order. However, the Tisch siblings did not designate this hearing transcript as part of the record on appeal. *See Colo. Dep't of Pub. Health & Env't v. Bethell*, 60 P.3d 779, 787 (Colo. App. 2002) (concluding that the appellant is responsible for designating the record on appeal, and if we do not receive a complete record we presume it supports the trial court's conclusions). Following the hearing, the parties submitted a revised proposed case management order containing a cap on expert witness fees and general litigation costs. Without the hearing transcript, we cannot determine the parties' positions on this revision or whether the court or the parties provided any justification for imposing these caps.

41

¶ 74    Be that as it may, the trial court adopted the revisions in its revised case management order.  As relevant here, paragraph 11 of that order provides as follows:

> Any limitations on awardable costs:
>
> Expert fees are capped at $35,000.00 per side, through trial.  General litigation costs are capped at a total of $7,000.00 per side, including deposition and transcript costs, filing fees, copy costs, exhibits, appearance fees.
>
> State the justifications for any modifications in the foregoing C.R.C.P. 26(b)(2) limitations:
>
> Ordered by the judge.

¶ 75    Although not reflected in the order, the parties agree that the trial court orally told them that if either party sought to raise the limits on awardable costs, that party should file a motion to do so. Neither party requested an increase in the cap.

¶ 76    After the court entered judgment, the Tisch siblings submitted a bill of costs requesting $52,670.60 for their expert witness, without referencing the $35,000 cap or requesting relief from it. The Tisch siblings now complain that the cap was arbitrary.  We conclude that they are not entitled to relief because they never availed themselves of the remedy provided by the court.

42

### 1. Standard of Review and Law

¶ 77 Trial courts have "considerable discretion in determining whether to award costs and what amount to award." *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1187 (Colo. App. 2011); *see Novel v. Am. Guar. & Liab. Ins. Co.*, 15 P.3d 775, 780 (Colo. App. 1999). An order awarding costs will stand absent a showing of a clear abuse of discretion. *Gf Gaming Corp. v. Taylor*, 205 P.3d 523, 526 (Colo. App. 2009). Similarly, as to expert witness fees, whether to award expert fees and in what amount are within the sound discretion of the trial court. *Clayton v. Snow*, 131 P.3d 1202, 1203 (Colo. App. 2006); *Steele v. Law*, 78 P.3d 1124, 1128 (Colo. App. 2003). We construe court rules de novo and, absent ambiguity, apply the language therein as written. *See Northstar Project Mgmt, Inc. v. DLR Grp., Inc.*, 2013 CO 12, ¶ 12.

¶ 78 Under C.R.C.P. 54(d), costs are awarded to a prevailing party based on relevant factors, which can include the needs and complexity of the case and the amount in controversy. "Generally, when costs are necessarily incurred by reason of the litigation and for the proper preparation for trial, they may be awarded to the prevailing party." *Mackall v. Jalisco Int'l, Inc.*, 28 P.3d 975, 977

(Colo. App. 2001). Section 13-16-122, C.R.S. 2018, lists categories of costs that may be awarded, which include, among other items, witness fees.

## 2. Analysis

¶ 79 The relevant portion of C.R.C.P. 16(b)(11) provides as follows:

> The proposed [case management] order shall state any modification to the amounts of discovery permitted in C.R.C.P. 26(b)(2), *including limitations of awardable costs, and the justification for such modifications consistent with the proportionality factors in C.R.C.P. 26(b)(1).*

(Emphasis added.)

¶ 80 We begin with the rule's plain language, which requires a justification for limits placed on awardable costs consistent with the proportionality factors in Rule 26(b)(1). The rule's use of the word "shall" indicates that a justification is mandatory. *See Tubbs v. Farmers Ins. Exch.*, 2015 COA 70, ¶ 10. Neither side identifies whether or where this justification occurred. The better practice would be to include the justification in the case management order. Nevertheless, we presume it occurred at the case management conference, given the statement "Ordered by the judge" and that consideration of these proportionality factors produced a cap

44

consistent with the expected litigation. *See Nelson v. Centennial Cas. Co.*, 130 Colo. 66, 72, 273 P.2d 121, 123 (1954) ("That error may have been committed by the trial court is never presumed, but must affirmatively be made to appear."); *Tallman v. Aune*, 2019 COA 12, ¶ 30 ("Indeed, '[t]here is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears[.]'" (quoting *Voorheis v. Jackson*, 35 U.S. 449, 472 (1836))). For these reasons, we cannot say that the caps were set arbitrarily.

¶ 81 Additionally, we find significant the court's oral ruling permitting either side to seek relief from the caps, which recognizes the reality that estimates are not always correct and that the caps may be insufficient. Even so, the Tisch siblings never requested relief from the expert witness cap, either before judgment or in their bill of costs. Therefore, we discern no abuse of discretion in the trial court's refusal to award expert witness fees beyond the $35,000 cap. *See Hallenbeck v. Granby Ditch & Reservoir Co.*, 160 Colo. 555, 573, 420 P.2d 419, 429 (1966) ("The record fails to reveal that the objector filed any such motion or that one was ever filed by anyone. After having been given the opportunity by the trial court

45

to pursue his request further in this action, the objector cannot now complain before this court when it appears that he failed to accept the trial court's offer . . . .").

## B. Contingent Fee Multiplier

¶ 82 The Tisch siblings next contend that the trial court should have based the attorney fees award on the treble damages amount, rather than on the jury's verdict, and they urge us to adopt a contingent fee multiplier. We decline their invitation to mandate a contingent fee multiplier and affirm the court's attorney fees award.

### 1. Standard of Review and Law

¶ 83 We review the reasonableness of an attorney fee award for an abuse of discretion. *Planning Partners Int'l, LLC v. QED, Inc.*, 2013 CO 43, ¶ 12. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, and we will not overturn a trial court's determination of a reasonable attorney fee award unless it is patently erroneous and unsupported by the evidence. *Id.*

¶ 84 An award of attorney fees must be reasonable. *Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143, 147 (Colo. App. 1996). In awarding attorney fees, the trial court may consider (1) the amount

in controversy; (2) the length of time required to represent the client effectively; (3) the complexity of the case; (4) the value of the legal services to the client; and (5) and awards in similar cases. *Id.*; *see also* Colo. RPC 1.5. To determine reasonable "prevailing party" attorney fees, the court calculates a "lodestar" amount, which represents the number of hours reasonably expended by the attorneys multiplied by a reasonable hourly rate. *Tallitsch*, 926 P.2d at 147. The court may then adjust the lodestar amount upward or downward by applying factors set forth in Colo. RPC 1.5. *Id.*

## 2. Application

¶ 85 Relying on *Spensieri v. Farmers Alliance Mutual Insurance Co.*, 804 P.2d 268, 270 (Colo. App. 1990), the trial court noted that the existence of a contingent fee agreement was one factor to consider in determining reasonable attorney fees. It also noted that the lodestar amount "carries with it a strong presumption of reasonableness." *Id.* After considering the Tisch siblings' contingent fee agreement, the lodestar amount of $133,223.22, and "all other circumstances," the court concluded that "the most reasonable way to calculate an award of attorney's fees here is to

apply the 1/3 contingency arrangement to the jury's $450,000.00 calculation of damages." It then increased the lodestar amount and awarded $150,000 in attorney fees.

¶ 86    The Tisch siblings cite no Colorado case law, nor have we found any, either requiring a trial court to give any greater effect to a contingency agreement in setting a reasonable fee or to apply a contingency percentage to a punitive award. Clearly, the trial court considered the contingent nature of the representation when increasing the lodestar amount. Thus, because the award is supported by the record, we discern no abuse of discretion. *Tallitsch*, 926 P.2d at 147.

### C.    Summary Judgment on Declaratory Relief

¶ 87    Finally, the Tisch siblings challenge the trial court's ruling granting Gary summary judgment on their declaratory judgment claim. That claim alleged improprieties in the number of owned shares and the division of voting and nonvoting stock stemming from father's failure to abide by the 1991 dissolution order and father's recapitalization of the business in 1997. The Tisch siblings claim they never knew their shares were converted to nonvoting

48

shares or that they owned fewer shares than they were originally granted.

¶ 88    The trial court concluded that this claim was barred by the statute of limitations.  It relied on language in a 2003 letter from their attorney to Gary stating, "The parties recognize that the 10% non-voting stock may be subject to a discount for lack of control, lack of marketability, et cetera . . . ."  We discern no error in the court's ruling.

### 1.    Standard of Review and Law

¶ 89    We review a trial court's ruling on a summary judgment motion de novo.  *Gibbons v. Ludlow*, 2013 CO 49, ¶ 11.  Summary judgment is appropriate when "there is no genuine issue as to any material fact," C.R.C.P. 56(c), and the "moving party is entitled to judgment as a matter of law," *Gibbons*, ¶ 11.  Because summary judgment denies a party a right to trial, a trial court should only enter summary judgment "where there is no role for the fact finder to play and where the controlling law entitles one party or the other to a judgment in its favor."  *Roberts v. Am. Family Mut. Ins. Co.*, 144 P.3d 546, 548 (Colo. 2006).  "[T]he nonmoving party is entitled to any favorable inferences that may reasonably be drawn from the

facts." *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 225-26 (Colo. 2001).

¶ 90 Any action to recover a liquidated debt or an unliquidated, determinable amount of money and for enforcement of rights set forth in any instrument must be commenced within six years of its accrual date. § 13-80-103.5(1), C.R.S. 2018. A cause of action accrues when the injury, loss, damage, or conduct giving rise to the claim is discovered or should have been discovered through the exercise of reasonable diligence. § 13-80-108(8).

## 2. Application

¶ 91 The parties do not dispute the contents of the letter or that the Tisch siblings were copied on it. As well, Gary attached copies of the original 1982 stock certificates to his summary judgment motion. They show that the Tisch siblings each received 1600 shares of stock, and that each certificate was signed by Daniel as secretary of the corporation.

¶ 92 The Tisch siblings also admitted, in their amended complaint, that they knew about the 1991 separation agreement, which entitled each of them to an *additional 10%* stock in the Liquor Barn. Thus, the 2003 letter's language identifying the Tisch siblings'

shares as "*10%* non-voting stock," notified them that their share amounts had not increased an additional 10% in 1991, and it placed them on notice of a share amount discrepancy. Had the Tisch siblings exercised due diligence to investigate this discrepancy in 2003, they would also have discovered the consequences of father's recapitalization in 1997 converting their voting stock to nonvoting status. Accordingly, we conclude that the trial court properly applied section 13-80-108(8) to find this claim time barred.

### D. Appellate Attorney Fees

¶ 93 The Tisch siblings request their appellate attorney fees, claiming that Gary's appeal of the civil theft judgment was frivolous. We disagree because, although we have affirmed the trial court's rulings, we do not find that Gary's arguments are entirely without legal merit. Nevertheless, the Tisch siblings are entitled to reasonable appellate attorney fees under the civil theft statute. § 18-4-405; *see Black v. Black*, 2018 COA 7, ¶ 130 (concluding that section 18-4-405 entitles party to appellate attorney fees). Accordingly, we exercise our discretion under C.A.R. 39.1 and remand the case to the trial court for a determination of reasonable appellate attorney fees allocable to the civil theft claim.

## IV. Conclusion

¶ 94 The judgment is affirmed, and the case is remanded for the determination of reasonable appellate attorney fees related to the civil theft claim.

JUDGE WEBB and JUDGE ROMÁN concur.